Kelmansky Law

Yuliya Kelmansky
State Bar No. 338601
145 South Fairfax Ave #222,
Los Angeles, California, 90036

Telephone: (213) 932-8922

Attorney for Defendant

UNITED STATE DISCRICT COURT
for the
Central District of California

| | |
|---|---|
| MAKSIM ZAITSEV,<br><br>Petitioner,<br>vs.<br><br>WARDEN, ADELANTO ICE PROCESSING CENTER,<br>In his/her official capacity,<br><br>ERNESTO SANTACRUZ, JR, ACTING FIELD OFFICE DIRECTOR, ENFORCEMENT AND REMOVAL OPERATIONS, U.S. IMMIGRATION AND CUSTOM ENFORCEMENT (LOS ANGELES FIELD OFFICE),<br><br>TODD M. LYONS, ACTING DIRECTOR OF U.S. IMMIRGATION AND CUSTOMS ENFORCEMENT,<br><br>KRISTI NOEM SECRETARY OF U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>THE ATTORNEY GENERAL OF THE UNITED STATES AND THE SENIOR OFFICIAL OF THE U.S. DEPARTNENT OF JUSTICE (DOJ),<br><br>Respondent. | Case No.<br><br>EMERGENCY MOTIOION FOR TEMPORARY RESTRAINING ORDER AND |

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that petitioner Maksim Zaitsev, by and through undersigned counsel, will and hereby does move this Court ex parte or on shortened notice for a Temporary Restraining Order (TRO) pursuant to Fed. R. Civ. P. 65 and 28 U.S.C. § 2241.

This motion is filed concurrently with petitioner's Emergency Petition for Writ of Habeas Corpus (§ 2241). The requested TRO seeks to:

1. Immediately prevent petitioner from being subjected to further unlawful detention and abuse by ICE officers;
2. Ensure release from unlawful detention, or in the alternative, placement in safe and humane custody pending adjudication;
3. Preserve petitioner's constitutional and statutory rights pending a full hearing.

The motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Counsel and supporting exhibits, the verified petition, and all pleadings and records on file in this matter.

## STATEMENT OF EMERGENCY

Petitioner Maksim Zaitsev is a 36-year-old Russian citizen and pending asylum applicant, scheduled for an individual hearing on January 7, 2026, before the Immigration Court.

- On February 25, 2025, ICE officers assaulted petitioner while handcuffed, attempting to force his sweatshirt hood into his mouth. Petitioner bit an officer's pinky finger in self-defense and sustained injuries by officer's brutal physical abuse.
- Despite a federal judge ordering petitioner's release, ICE continues to detain him, placing him at imminent risk of further physical and psychological harm.
- Petitioner's continued detention constitutes irreparable harm that cannot be remedied after the fact.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. Legal Standard for TRO

Under Fed. R. Civ. P. 65, a TRO may be issued to prevent immediate and irreparable injury before a full hearing can be held. To obtain a TRO, petitioner must demonstrate:

1. Likelihood of success on the merits;
2. Irreparable harm in the absence of relief;
3. That the balance of equities favors the petitioner; and
4. That the public interest would be served.

See Winter v. NRDC, 555 U.S. 7 (2008); Munaf v. Geren, 553 U.S. 674 (2008).

## II. Application to Petitioner Maksim Zaitsev

1. Likelihood of Success:

   - Petitioner is unlawfully detained despite the federal judge's release order.
   - ICE's continued detention and documented abuse violate 5th Amendment Due Process and 8 U.S.C. §§ 1226(a) and (c).

2.

3. Irreparable Harm:

   - Petitioner faces ongoing physical assault and psychological trauma in ICE custody.
   - Injuries include harm to his mouth and pinky finger, sustained while defending himself from suffocation.

4.

5. Balance of Equities:

   - Protecting petitioner's constitutional rights outweighs any administrative convenience to ICE.

6.

7. Public Interest:

   - Preserving the rights of civil immigration detainees and preventing abuse serves the public interest.

8.

# DECLARATION OF COUNSEL / EVIDENCE

I, Yuliya Kelmansky, counsel for petitioner, declare:

1. I have personal knowledge of the facts stated herein and in the petition.
2. Supporting exhibits include:
    - Exhibit A: United States District Court Central District of California Reporter's transcript of proceedings motion to dismiss hearing (Case number CR-25-00154-SPG).
    - Exhibit B: Photographs of Petitioner's Injuries

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 21/12/2025

Signature: ____________________

Yuliya Kelmansky

# PROPOSED TEMPORARY RESTRAINING ORDER

IT IS HEREBY ORDERED THAT:

1. Respondents shall immediately release petitioner Maksim Zaitsev from unlawful detention, or, in the alternative, ensure safe and humane custody pending adjudication of the habeas petition.
2. Respondents are enjoined from subjecting petitioner to physical abuse, mistreatment, or further harm.
3. This order shall remain in effect until further order of this Court, including after a preliminary injunction hearing.
4. Respondents shall file a response within three (3) days showing cause why this petition should not be granted.
5. The Court retains jurisdiction to grant further relief as deemed just and proper.

Dated: ___________________________

United States District Judge

# EXHIBIT A

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

- - -

HONORABLE SHERILYN PEACE GARNETT, DISTRICT JUDGE PRESIDING

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiffs,<br><br>vs.<br><br>MAKSIM ZAITSEV,<br>Defendant. | No. CR 25-00154-SPG |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

*MOTION TO DISMISS HEARING [98]*

LOS ANGELES, CALIFORNIA

TUESDAY, MAY 20, 2025

MARIA R. BUSTILLOS
OFFICIAL COURT REPORTER
C.S.R. 12254
UNITED STATES COURTHOUSE
350 WEST 1ST STREET
SUITE 4455
LOS ANGELES, CALIFORNIA 90012
(213) 894-2739

# A P P E A R A N C E S

**ON BEHALF OF THE PLAINTIFFS, UNITED STATES OF AMERICA:**

OFFICE OF THE UNITED STATES ATTORNEY
BY: RAHUL R.A. HARI
312 NORTH SPRING STREET
TWELFTH FLOOR
LOS ANGELES, CA 90012
(213)894-6159

OFFICE OF THE UNITED STATES ATTORNEY
BY: NEIL THAKOR
312 NORTH SPRING STREET
TWELFTH FLOOR
LOS ANGELES, CA 90012
(213)894-6595

**ON BEHALF OF THE DEFENDANTS, MAKSIM ZAITSEV:**

OFFICE OF THE FEDERAL PUBLIC DEFENDER
BY: SHANNON M. COIT
321 EAST 2ND STREET
LOS ANGELES, CA 90012
(213)894-2854

OFFICE OF THE FEDERAL PUBLIC DEFENDER
BY: RYAN SHELLEY
321 EAST 2ND STREET
LOS ANGELES, CA 90012
(213)894-2854

**I N D E X**

PAGE

MOTION TO DISMISS HEARING [98]: 5

LOS ANGELES, CALIFORNIA; TUESDAY, MAY 20, 2025

-o0o-

(COURT IN SESSION AT 9:08 A.M.)

THE COURTROOM DEPUTY: Calling CR 25-00154-SPG-1: *United States of America v. Maksim Zaitsev.*

Government counsel, please make your appearances.

MR. HARI: Good morning, Your Honor.

AUSAs Rahul Hari and Neil Thakor for the Government, joined at counsel table by AUSA Michael Morse.

MR. MORSE: Good morning, Your Honor.

MR. TAKOR: Good morning, Your Honor.

THE COURT: Good morning.

MS. COIT: Good morning, Your Honor.

Shannon Coit from the Federal Public Defender's Office on behalf of Maksim Zaitsev, who is seated with me at counsel table and is being assisted by a Russian-language interpreter.

Also at counsel table is Ryan Shelly.

THE COURT: Good morning.

And if the interpreter could identify himself.

THE INTERPRETER: Vladimir Ferkelman, professionally approved; oath is on file.

THE COURT: All right. Thank you. So -- oh, sorry.

THE INTERPRETER: Good morning. Vladimir Ferkelman, and Natalia Kharikova, certified Russian interpreter.

THE COURT: Thank you. Thank you.

So today is the day for the start of the trial. There is a pending motion -- motions. The motion in limine number 5 and more importantly, the Defense's motion to dismiss. We had an evidentiary hearing yesterday, and the Court has spent an inordinate amount of time considering the evidence that was admitted yesterday, the parties' arguments, case law. And I'm prepared to rule on that motion.

So the -- for purposes of the motion, the record before the Court is as follows: Bear with me. On March 7th, 2025, the Government indicted defendant Maksim Zaitsev for assault on a federal officer, resulting in infliction of bodily injury, in violation of Title 18 United States Code Section 111(a)(1), (b).

Mr. Zaitsev is a Russian national, seeking asylum in the United States, with an asylum interview previously scheduled to occur in July of 2025. The indictment arises out of events that took place on February 2025, when Mr. Zaitsev and his wife arrived at

the Federal Building in Los Angeles, California, in response to a United States Customs and Immigration Services Notice of Appointment. Upon arriving at the Federal Building, Mr. Zaitsev, who does not speak English, was presented with an administrative arrest warrant in English, and Officers Hisle and Robles from Immigration and Customs Enforcement, which I'll refer to as ICE, initiated the arrest by placing handcuffs on Mr. Zaitsev.

The Government alleges that while Mr. Zaitsev was being led into a public hallway by the arresting officers, Mr. Zaitsev dropped his weight in an act of passive resistance. In the process of arresting Mr. Zaitsev, the Government alleges that Mr. Zaitsev bit Officer Robles's finger when Officer Robles placed his hand over Mr. Zaitsev's face because he was -- or assumed that Mr. Zaitsev, who was speaking in Russian, was trying to alert his longtime companion or wife that he was being arrested.

The Government admits that Officers Robles and Hisle punched Mr. Zaitsev on the head and face multiple times while Mr. Zaitsev was biting Officer Robles's finger. Officer Robles's finger was fractured as a result of the biting of Mr. Zaitsev, and Mr. Zaitsev sustained multiple lacerations to his head and face,

allegedly at the result of the officers punching Mr. Zaitsev repeatedly. There were no cameras in the areas of the Federal Building where the February 25th, 2025 arrest and resulting actions occurred.

Mr. Zaitsev entered the plea of not guilty and at various times has asserted the possibility of a self-defense theory. On April 4th, 2025, Mr. Zaitsev was placed in ICE custody pursuant to an immigration detainer and has been held at an ICE facility in Adelanto, California. Trial was set to begin today.

On May 14, 2025, Mr. Zaitsev appeared in court at the First Street Federal Courthouse in this courtroom for a hearing on the Government's motion in limine number 5, requesting the Court preclude evidence and argument at trial pertaining to the personnel files of Officers Robles and Hisle. Federal Protective Service Special Agent Thomas Smith was present during the hearing and was seated at Government's counsel's table.

Following that hearing, Mr. Zaitsev was transported by Agent Smith from the First Street Federal Courthouse to the Downtown Los Angeles ICE holding facility. After Agent Smith notified the facility of Zaitsev's arrival via an intercom system, Officer Hisle received Mr. Zaitsev at the entrance to the ICE holding

facility. Although Officer Hisle was scheduled to work that day, according to his supervisor, Officer Hisle was not scheduled to be in the intake area when Mr. Zaitsev arrived. According to Officer Hisle, he was attending to another detainee at the time.

What transpired thereafter was the subject of the Defense's motion to dismiss. The motion filed by the Defense was supported by pictures of bruising on Mr. Zaitsev's head and face after Officer Hisle and Robles punched Mr. Zaitsev on February 25th, 2025. That was Exhibit A. SA Smith's May 15, 2025 report regarding the meeting between Government counsel, Agent Smith, and Officer Hisle, that was Exhibit C; surveillance video from the ICE facility depicting the May 14, 2025, incident, that was Exhibits D and G; a memorandum written by Officer Hisle regarding the May 14th, '25 incident -- 2025 incident as part of ICE disciplinary investigation, that was Exhibit I; and correspondence between Government counsel and Defense counsel, that's Exhibits B, E, F, and H.

According to SA Smith's May 15 report, Officer Hisle represented to SA Smith and Government counsel that on May 14, 2025, while processing Mr. Zaitsev back into custody, he asked Mr. Zaitsev if he remembered Officer Hisle. According to

Officer Hisle, Mr. Zaitsev looked back and did not recognize Officer Hisle. Officer Hisle then took his face covering off and again asked Zaitsev, "Now do you remember me?" According to Officer Hisle, after Mr. Zaitsev acknowledged him, no other conversation or interaction took place.

According to the memorandum written by Officer Hisle on May 15, 2025 to his first-line supervisor, Carlos Fuentes, on May 14, SA Smith asked Officer Hisle if he could escort a detainee into the detention facility. Officer Hisle, by his accounts, agreed and began to escort Mr. Zaitsev into the facility. According to Officer Hisle, halfway to the front desk, quote, "was the moment that Officer Hisle recognized Mr. Zaitsev."

While waiting, Officer Hisle, who was wearing a partial face covering over his nose and mouth, asked Mr. Zaitsev, in what Officer Hisle described in the letter as a normal tone, if Mr. Zaitsev remembered Officer Hisle. When Mr. Zaitsev turned and just looked at Officer Hisle, Officer Hisle lowered his face covering so that Mr. Zaitsev could see his face to which Mr. Zaitsev gave an expression of acknowledgement. According to Officer Hisle, he then just turned and walked away.

Officer Hisle further represented in his letter to his supervisor, quote, "at no time during this interaction did I ever raise my voice or make any implied, explicit, coercive, intimidating statements or make any threatening physical gestures or threats of any kind," unquote.

The Defense also submitted two surveillance videos. The first video captures the hallway where the intake window is located and where Mr. Zaitsev and Officer Hisle interacted. The video footage depicts the scene from a camera angle that appears to be located above a door exiting the hallway that is located on the wall opposite the intake window, several feet to the right of the intake window. The camera appears to be closest to the bottom right of the footage, and most of the interaction between Mr. Zaitsev and Officer Hisle occurs at the top right of that footage. There is no corresponding audio.

The second videocamera captures what the parties reference as the sally port loading area, where SA Smith arrived with Mr. Zaitsev at the facility on May 14th.

Yesterday, on May 19th, 2025, the Court held an evidentiary hearing on the allegations contained in the motion and the supporting documentary evidence and the

Government's opposition. The Defense called three witnesses to testify: Officer Hisle, Agent Smith, and Mr. Zaitsev. Defense counsel questioned all three witnesses regarding the interaction between Officer Hisle and Mr. Zaitsev. The Government called no witnesses of its own and asked no questions of any of the Defense's witnesses.

The evidence from the evidentiary hearing is as follows:

As to SA Smith: First, the Defense called SA Smith. SA Smith testified that he received reports and other materials regarding Mr. Zaitsev's arrest and the case, including the statements of DO Robles and Hisle about Mr. Zaitsev's arrest on February 25th, 2025 and the officers' use of force against Mr. Zaitsev.

Based on this testimony, the Court infers that SA Smith also reviewed Officer Hisle's and Robles's statements that they repeatedly punched Mr. Zaitsev on the day of Mr. Zaitsev's arrest and the FPS report of the incident, which documented that Mr. Zaitsev had sustained multiple lacerations to his head and face during his arrest.

SA Smith also testified during the hearing that he reviewed photographs of Mr. Zaitsev's injuries sustained during the arrest. In fact, SA Smith

testified that while handing Mr. Zaitsev over to Officer Hisle on May 14, 2025, the two engaged in conversation with SA Smith reminding Officer Hisle that he had an appointment that day in approximately two hours to meet with SA Smith and the Government counsel for further witness preparation for trial on this case.

The Court also notes that SA Smith was present and sat at Government's counsel table during the May 14, 2025 hearing on the Government's motion in limine number 5 to exclude information from Officer Hisle's personnel file. Mr. Zaitsev was also present during the hearing and sat at Defense table across from SA Smith. The Government declined to conduct any examination of SA Smith during the evidentiary hearing yesterday.

As to SA Hisle, during the hearing on defendant's motion, Defense counsel called Officer Hisle as a witness, and he was placed under oath -- strike "SA" -- he is Officer Hisle.

Before giving testimony, the Court advised Officer Hisle of his Fifth Amendment right to remain silent and the right to be represented by and consult an attorney, given the Defense's allegations of essentially witness tampering and other circumstances. Officer Hisle indicated he understood his rights and

agreed to waive them.

Defense counsel then questioned Officer Hisle about his May 16th letter. Officer Hisle first gave testimony affirming each of the representations in his letter. When questioned further, however, Officer Hisle admitted that he omitted information from that letter, including that he asked Mr. Zaitsev more than once if he remembered Officer Hisle. Officer Hisle further testified that he met with SA Smith and the Government more than three times for Officer Hisle's trial preparation, but did not recall ever being told by Officer [sic] Smith or Government counsel not to have any contact with Mr. Zaitsev.

Defense counsel also played portions of a video of Officer Hisle's interaction with Mr. Zaitsev at the ICE detention facility on May 14, 2025. In response to questioning, Officer Hisle testified that he did not speak with SA Smith about the case or Zaitsev's identity and reiterated that he did not recognize Mr. Zaitsev until halfway to the intake window while walking to the side and slightly behind Mr. Zaitsev.

Officer Hisle, who is six feet tall and weighs roughly 230 pounds, admitted, however, that he came within 6 inches of Mr. Zaitsev's face when he asked Mr. Zaitsev more than once if he remembered

Officer Hisle, lingered in the area while Mr. Zaitsev was being processed, and pumped his clenched fist in the air while looking in the direction of Mr. Zaitsev as Mr. Zaitsev looked down the hallway at Officer Hisle.

From the Court's review of the video, it captures Officer Hisle escorting Zaitsev into the detention facility hallway; Officer Hisle standing face to face, within very close proximity of Mr. Zaitsev; Officer Hisle's head moving back and forth towards Mr. Zaitsev while appearing to speak; and Officer Hisle using his finger to point while doing so. The video also captures Officer Hisle moving away from Mr. Zaitsev, lingering in the hallway while appearing to watch Mr. Zaitsev, the pumping of a clenched fist in the air while looking at Mr. Zaitsev as Zaitsev is looking in the direction of Officer Hisle.

Government counsel had the opportunity to question Officer Hisle regarding his intent when engaging in such conduct but chose not to question Officer Hisle.

Finally, during the hearing, the Defense called Mr. Zaitsev as a witness, and he was placed under oath. Mr. Zaitses -- sorry, Zaitsev, with the assistance of a Russian-language interpreter, testified that on May 14, after SA Smith transferred custody to Officer Hisle,

Officer Hisle took hold of defendant's left arm with a force described by Mr. Zaitsev as a 9 out of 10. Officer Hisle then led defendant into the intake area of the ICE facility.

While standing in the intake area, Officer Hisle, with his face close to defendant's face, spoke to defendant. Although defendant looked at Officer Hisle, he did not respond. Officer Hisle then removed the mask he was wearing and spoke again to Mr. Zaitsev. Mr. Zaitsev testified that although he did not understand what Officer Hisle said to him in English, Officer Hisle's tone was very rude and threatening, and he understood the word "remember."

Mr. Zaitsev testified that the May 14, 2025 interaction with Officer Hisle made him quote, "very scared," quote, "shocked," and, quote, "frightened," because Mr. Zaitsev had the, quote, "previous incident," unquote, with Officer Hisle where Officer Hisle punched Mr. Zaitsev on February 25th, 2025.

Mr. Zaitsev testified that Officer Hisle's actions on May 14, 2025, combined with his actions on February 25th, 2025, have made Mr. Zaitsev fear that Government officials will take Mr. Zaitsev to an area without cameras and subject him to physical assault. Mr. Zaitsev believes that ICE officers would retaliate

against him if he were to testify at his trial to his self-defense on February 25th, 2025.

The Government had the opportunity to cross-examine Mr. Zaitsev on issues material to the motion, including on the issue of substantial prejudice. It chose not to do so, leaving Mr. Zaitsev's claim of being intimidated by Officer Hisle's actions on May 14 and being afraid to testify during trial unrebutted.

As the Government correctly argues, an indictment may be dismissed with prejudice under either of two grounds: First, a district court may dismiss an indictment on the ground of outrageous Government conduct if the conduct amounts to a due process violation. Second, if the conduct does not rise to the level of a due process violation, the Court may nonetheless dismiss under its supervisory powers. And that is found in *United States v. Chapman*, 524 F.3d 1073 (Ninth Circuit 2008).

Under the first ground for the Court to find a due process violation, the conduct of the Government must be so grossly shocking and so outrageous as to violate the universal sense of justice, *United States v. Barrera-Moreno*, 951 F.2d 1089. It is well-established that substantial Government interference with a Defense witness -- witness's free and unhampered choice to

testify amounts to a violation of due process, *Earp v. Ornoski*, 431 F.3d 1158 (Ninth Circuit 2005). A defendant alleging such interference is required to demonstrate misconduct by a preponderance of the evidence, *United States v. Vavages*, 151 F.3d 1185 (Ninth Circuit 1998).

Under the second ground, a federal court is empowered to dismiss an indictment on the basis of Government or prosecutorial misconduct. A district court may exercise its supervisory power to implement a remedy for the violation of a recognized statutory or constitutional right to preserve judicial integrity by ensuring that a conviction rest on appropriate considerations validly before a jury and to deter future illegal conduct. That is the *Chapman* case.

However, because dismissal of an indictment with prejudice encroaches upon the prosecutor's charging authority, the Ninth Circuit has cautioned that such sanction is warranted only upon a showing of the three following elements:

First, the challenged conduct must demonstrate flagrant prosecutorial misconduct or Government conduct. Accidental or merely negligent Government conduct is insufficient to establish flagrant misbehavior. Flagrant misbehavior may be, at a minimum, demonstrated

by a reckless disregard for the prosecutor's constitutional obligations.

Second, dismissal is warranted under a Court's supervisory power only when the defendant suffers substantial prejudice.

Third and finally, there must be no lesser remedial action available. Under either due process grounds or the Court's inherent authority, the inquiry is extremely fact-specific with courts looking to the totality of the circumstances.

Based on the totality of the circumstances in this case, the Court concludes that Officer Hisle's conduct in this case, which is imputed to the Government as a whole, amounts to substantial Government interference with defendant's free and unhampered choice to testify, in violation of his due process rights.

From the record, the Court finds as follows: As to Officer Hisle, Officer Hisle engaged in outrageous conduct amounting to a due process violation. Officer Hisle was previously involved in the altercation at the center of this case. During Mr. Zaitsev's arrest, Officer Hisle, together with Officer Robles, punched defendant in the face multiple times in an area without security cameras, injuring Mr. Zaitsev. Both officers admit that they administered strikes, or in layman

terms, repeatedly punched Mr. Zaitsev during his -- his arrest while he bit down on Officer Robles's finger.

Officer Hisle is not only an eyewitness to these events; he was a percipient -- or a participant in them. As such, he is an important witness in this case central both to the Government's case and defendant's possible self-defense arguments. According to the briefing, Officer Hisle was not supposed to be in the intake area at the time of Mr. Zaitsev's return, and his supervisor is not sure why Officer Hisle was there.

ICE has initiated an investigation into Officer Hisle's conduct. Although Officer Hisle has been placed under disciplinary investigation by ICE related to the May 14, 2025 interaction with defendant, he remains on active duty and, as of the date of the evidentiary hearing yesterday, has not been placed on administrative leave.

Although Officer Hisle testified that his tone was calm when interacting with Mr. Zaitsev and he did not engage in any intimidating and threatening behavior -- he also stated that in the letters to his supervisor, Carlos Fuentes -- I do not find Officer Hisle's testimony during the evidentiary hearing or his account in the letters to be credible, especially in light of the accounts of the incident he gave to

both, SA Smith and Officer Hisle's supervisors, which are contradicted by the video of the incident.

The Court finds from the record that Officer Hisle's conduct towards Mr. Zaitsev was threatening and intimidating and that the threatening and intimidating behavior, which occurred just six days before the trial was scheduled to begin, was obvious, flagrant, and outrageous.

According to defendant, Officer Hisle grabbed his arm forcefully when escorting Mr. Zaitsev and was aggressive towards Mr. Zaitsev. The video shows and Officer Hisle admits that he got within six inches of defendant's face when he was making statements to Mr. Zaitsev. The Court credits Mr. Zaitsev's testimony that Officer Hisle's tone was very rude and threatening. During this timeframe, the video shows Officer Hisle's head moving towards Mr. Zaitsev's head and Officer Hisle putting his hand up and pointing his finger near Mr. Zaitsev's face.

From the Court's review of the video -- and I reviewed it repeatedly -- Officer Hisle's stance appears to be confrontational as he engages with Mr. Zaitsev. The video also shows Officer Hisle walking away from Mr. Zaitsev at first, then returning to a similarly close distance. After walking away a second time, he

turned back towards Mr. Zaitsev and made a gesture with his right hand. His back is turned to the camera, so the camera does not capture Officer Hisle's face or whether he is speaking to Mr. Zaitsev at the time.

Finally, the video captures that while exiting the hallway, Officer Hisle held up his clenched face and pumped it in the air while looking at Mr. Zaitsev. And Mr. Zaitsev appears in the video to be looking at Officer Hisle or at least in his direction.

When questioned, Officer Hisle could not explain why he raised his fist. And when I say "when questioned," by the Defense. The Government could have asked Officer Hisle why he engaged in these actions, why it was so important to Officer Hisle for Mr. Zaitsev to remember him, and for what it is worth, whether Officer Hisle intended to threaten or intimidate Mr. Zaitsev.

In just six days, Officer Hisle knew that he would have the opportunity to take the stand during trial and to give his account of what occurred on the day of Mr. Zaitsev's arrest. At the time, Mr. Zaitsev would have had the opportunity to see Officer Hisle again, and Mr. Zaitsev would also have the opportunity, if he elected to do so, to tell his side of what occurred on the day of his arrest.

So why was it so important to Officer Hisle, six days before the trial, for him to make sure that Mr. Zaitsev remembered who Officer Hisle was, so much so that Officer Hisle asked him once if Mr. Zaitsev remembered him, and when Officer Hisle received no acknowledgement from Mr. Zaitsev, Officer Hisle, within six inches of Mr. Zaitsev's face, lowered his mask, stood face to face with Mr. Zaitsev, and raised his hand and pointed and again asked Mr. Zaitsev if he remembered Officer Hisle?

What was the point when Officer Hisle knew that Mr. Zaitsev did not speak English and likely could not understand the words that Officer Hisle was saying?

What did the other officer witnesses say to Officer Hisle that caused Officer Hisle to walk away after speaking with Mr. Zaitsev?

Why did Officer Hisle linger as Mr. Zaitsev was being processed?

What was the gesture that he made with his hand toward Mr. Zaitsev?

And as he admitted on the stand and was clear in the video, why did Officer Hisle place his clenched fist in the air and pump it while looking at Mr. Zaitsev as Mr. Zaitsev looked at Officer Hisle. Was it to remind Mr. Zaitsev that the same fist was one of two

used at the time of the arrest to repeatedly beat Mr. Zaitsev into submission?

Did Officer Hisle engage in these actions to demonstrate how easily he could have access to Mr. Zaitsev after the trial?

Was it to dissuade Mr. Zaitsev from giving his account during trial?

And Government could have asked questions of Mr. Hisle to clarify his intentions, but the Government chose not to do so.

The video depicts that at least three other officers were present during the period while Officer Hisle interacted with Mr. Zaitsev, at least one of which appeared to be within earshot of the interaction. Two of the three officers were present outside the courtroom during the evidentiary hearing yesterday. The Government could have called these two other officers in an effort to corroborate Officer Hisle's account, but the Government chose not to do so.

The Court was thus left to consider Officer Hisle's testimony, which again, it found to be not credible and false in light of the video evidence to the contrary. The Government was left to consider -- strike that -- the Court was left to consider

Mr. Zaitsev's testimony regarding Officer Hisle's threatening tone and multiple statements to Mr. Zaitsev that he could not understand. The Court considered Officer Hisle's clenched fist pumped in the air.

And the Court concludes, based on the totality of the circumstances, that Officer Hisle's conduct, which the Court finds was, in fact, threatening and intimidating, amounted to substantial Government interference with Mr. Zaitsev's free and unhampered choice to testify.

As to SA Smith, from the record, the Court finds that SA Smith knew Officer Hisle's involvement in the case and Officer Hisle's prior use of force on Mr. Zaitsev and his status as a witness in this case. Special Agent Smith had previously met with Officer Hisle on multiple occasions and seen photos of Mr. Zaitsev as he was punched -- or after he was punched by Officers Hisle and Robles and had discussed the substance of Officer Hisle's testimony, including the various past bad acts that the Defense was seeking to use as impeachment evidence against the officers.

During the May 14 hearing, the parties discussed the admissibility of that impeachment evidence related to Officer Hisle's prior use of force. Special Agent Smith was present during this hearing and,

in fact, sat at Government counsel's table. After the hearing, SA Smith recognized Officer Hisle at the time he handed Mr. Zaitsev to Hisle and reminded Officer Hisle of an interview of Hisle that would take place in approximately two hours that day.

Despite this recognition of Officer Hisle, his knowledge of the history between Officer Hisle and Mr. Zaitsev, and his presumed knowledge that Officer Hisle should have had no contact with Mr. Zaitsev, SA Smith did not ask for another officer to take custody of Mr. Zaitsev when the video depicts other officers were present in the detention facility.

There is no testimony of SA Smith telling Officer Hisle not to speak with Mr. Zaitsev. The Government did not seek to elicit any such testimony. Instead, SA Smith handed Mr. Zaitsev over to Officer Hisle and went on his way.

If Officer Hisle had simply conducted the intake and had not said a word to Mr. Zaitsev, we likely would not be facing a Defense motion of dismissal, but that did not occur.

To be clear, I do not find SA Smith had bad intentions in engaging in this conduct nor does the record necessarily support such a finding to the contrary. The Court considered the responsibilities of

SA Smith that he had that day of transporting Mr. Zaitsev to court, sitting through a lengthy *Henthorn* hearing, communicating with counsel and witnesses, transporting Mr. Zaitsev back to the detention facility, and preparing for another witness preparation session to take place between Officer Hisle and the Government counsel in just a few hours.

Without more information, the Court has chosen to infer that the actions of SA Smith may have, in part, been due to being busy, distracted, or preoccupied rather than being due to him having a nefarious intent. Nevertheless, SA Smith's actions were essentially the equivalent of him knowingly handing an admittedly battered individual to the accused batterer on the eve of a domestic violence trial in which both individual's actions on the day of the domestic violence incident would be called into question. The Court finds that SA Smith's conduct evinced a reckless disregard for the Government's constitutional obligations.

As to the Government -- as to Government counsel, I do not find, as the Defense urges, that Government counsel intentionally delayed disclosing the misconduct of Officer Hisle. With regard to Officer Hisle, I find that Government counsel's conduct was appropriate in disclosing Officer Hisle's actions

and initiating some investigation of them. Such investigation takes time but is necessary so that the Government is not providing the Defense with incorrect information. The Court accepts the Government's proffer of how the events unfolded, seeing no material evidence to the contrary, and finds that the amount of time it took the Government to disclose the May 14th incident to the Defense was reasonable and appropriate.

True, the Government could have asked another agent unrelated to the incident to prepare a report of the May 14, 2025 incident and to interview Officer Hisle and could have interviewed other witnesses who were present, but that decision is not a basis for the Court's due process violation findings.

Based on the record, the Court finds Officer Hisle's conduct, attributable to the Government, amounts to substantial interference with Mr. Zaitsev's free and unhampered determination to testify. Mr. Zaitsev has a credible and reasonable fear of retaliation for his testimony caused by Officer Hisle's conduct and Mr. Zaitsev's continued presence in ICE custody.

The Government cites primarily the cases in which witnesses, other than the defendant, were threatened with perjury, prosecution, and other

consequences to argue that the conduct here does not arise to a due process violation or even a basis for the Court to exercise its inherent authority to dismiss. The Court finds, however, that the facts presented in this case is even more egregious than existing case law because it interfered with the defendant's personal right to testify, rather than of a Defense witness.

Although Government counsel argued in its briefing and during the hearing that successful assertion of a due process violation is extremely rare, Government counsel also conceded during the hearing this is, in fact, the rare case.

The Court emphasizes that even if the Court were to find that the conduct discussed in this Court's order did not rise to a due process violation, the Government's conduct justifies dismissal pursuant to the Court's supervisory power, as well. The Court's exercise of its supervisory power protects the integrity of the federal courts and prevents the courts from making themselves accomplices in willful disobedience of the law, *United States versus Bundy*, 968 F.3d 1019 (Ninth Circuit 2020).

Stated previously, such supervisory power should be used to dismiss an indictment only when the misconduct represents a serious threat to the integrity

of the judicial process. As stated previously, such sanction is warranted only upon a showing that: First, the challenged conduct demonstrates flagrant Government or prosecutorial misconduct. Accidental or merely negligent Government conduct is insufficient to establish flagrant behavior. Flagrant behavior may be, at a minimum, demonstrated by a reckless disregard for the prosecution's constitutional obligations.

Second, dismissal is warranted under a Court's supervisory power only when the defendant suffers substantial prejudice.

Third and finally, there must be no lesser remedial action available.

Given the reasons already articulated, the Court finds the Government's conduct was flagrant. This misconduct substantially prejudiced Mr. Zaitsev, specifically his right to testify without fear or threat from key Government witnesses, and no other remedy rectifies the consequences arising out of misconduct.

As to Mr. Zaitsev's right to testify, as stated by the Supreme Court in *Rock versus Arkansas*, 483 U.S. 44 (1987), the right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution. It is one of the rights that are essential to due process of law in a fair adversary

process.

The right to testify is also found in the compulsory process clause of the Sixth Amendment, which grants a defendant the right to call witnesses in its favor, a right that is guaranteed in the criminal courts of the States by the Fourteenth Amendment.

Logically included in the accused's right to call witnesses whose testimony is material and favorable to his defense is a right to testify himself should he decide it is in his favor to do so. Here, Mr. Zaitsev testified during the evidentiary hearing that since the interaction, he has been afraid that Officer Hisle or other officers would take him into an area without cameras and beat him up again. He has not been able to sleep well and is worried that ICE officers will retaliate against him for testifying at trial.

Importantly, that testimony, again, was unrebutted. The Government could have questioned Mr. Zaitsev as to these assertions, as well as the reasons why he was able to testify during the evidentiary hearing, but the Government chose not to do so.

The Court notes that Mr. Zaitsev remains in ICE custody, and Officer Hisle remains on active duty, creating the possible future -- possibility of future

interactions.

The Court finds that this Officer Hisle -- or that Officer Hisle's misconduct and SA Smith's recklessness, both of which are imputed to the Government, substantially prejudices defendant by impairing his right to freely testify at trial about the alleged circumstances of the physical encounter between himself and Officer Robles and Hisle, which is probative to his self-defense theory.

As to the third element for Court to exercise its supervisory powers, namely lesser alternative remedies, the Court acknowledges that dismissal is a drastic and less desirable remedy. However, the Government has failed to demonstrate its proffered lesser alternative remedies are sufficient to rectify the resulting damage from the Government's misconduct. The Government's proffered remedies are simply too little too late because the Government's actors' misconduct has already triggered Mr. Zaitsev's constant fear surrounding his right to freely testify and the potential retaliation, whether physical or mental, that could impair his rights.

Further, the Government's proffered remedies improperly shifts the burden onto the Defense to have to call Officer Hisle to the stand in an attempt to

demonstrate his lack of credibility. But Mr. Zaitsev is presumed to be innocent until proven guilty beyond a reasonable doubt by the Government and should not have to bear the burden of proving his innocence.

Finally, the Government's remedy of sealing the courtroom while Mr. Zaitsev testifies is pointless, given the Court's finding that Mr. Zaitsev's right to testify has already been impaired and is not a true remedy if Mr. Zaitsev, as he testified yesterday, elects not to testify due to fear.

No other remedies were proffered by the Government nor does the Court, in light of the totality of the circumstances, see any other remedies that would be sufficient to rectify the violations and deter the conduct alleged in the case, other than that requested by the Defense of dismissal.

To be clear, the Court does not take lightly the allegations in this case involving an assault on law enforcement officers. There is no dispute in this case that the injury sustained by Officer Robles on the day of the incident was serious and may result in the need for continued care. Having worked closely for many years with federal and law enforcement, the Court appreciates the difficulties inherent in their jobs, the constant scrutiny their actions face, and the constant

risk they face when performing their duties.

For the same reason, the Court also does not take lightly the implications its findings may have on the law enforcement officers involved. The Court also does not take lightly the allegations possibly involving the level of force used on Mr. Zaitsev and whether it resulted in the need for Mr. Zaitsev to defend himself.

The Court also appreciates the time and effort put into this case by the parties and was ready, willing, able, and candidly looking forward to presiding over this trial and adjudicating the merits of this case.

As I speak this morning, there are 40 prospective jurors drawn from a cross-section of the community waiting in the jury assembly room to be selected to serve on the case, and the Court was looking forward to selecting with counsel a fair and impartial jury to decide the facts of this case.

The Court was looking forward to giving each side their day in court, to receiving evidence, and to having the jury ultimately determine whether Mr. Zaitsev is guilty or not guilty of the offense charged, but due primarily to the actions of Officer Hisle, which are imputed to the Government generally, none of that will happen.

For all of the foregoing reasons, the Court concludes that the Government's conduct was so outrageous that it violated the universal sense of justice and substantially interfered with Mr. Zaitsev's right to testify in his criminal trial, in violation of Mr. Zaitsev's due process right. This misconduct also warrants the Court's exercise of its supervisory power to dismiss the case. The Court finds that the Government's conduct was flagrant, substantially prejudiced Mr. Zaitsev's due process right to testify, and that none of the lesser remedies advanced by the Government rectifies the harm already done in this case and to Mr. Zaitsev's right to testify.

Thus, for all the foregoing reasons, the Court dismisses the indictment in this case with prejudice.

Any questions?

MR. HARI: None from the Government, Your Honor.

MS. COIT: Not from the Defense, Your Honor.

THE COURT: I want to thank the attorneys in this case for your work on this case, for your arguments. And it's an unfortunate result.

MS. COIT: Thank you, Your Honor.

MR. HARI: Thank you, Your Honor.

THE COURT: We're in recess.

(Whereupon, proceeding adjourned.)

- - -

# C E R T I F I C A T E

UNITED STATES OF AMERICA :

vs. : No. CR 25-00154-SPG

MAKSIM ZAITSEV :

I, MARIA BUSTILLOS, OFFICIAL COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

/S/ 06/17/2025

MARIA R. BUSTILLOS DATE
OFFICIAL REPORTER

**'**

**'25** [1] - 8:16

**/**

**/S** [1] - 36:22

**0**

**06/03/2025** [1] - 36:22

**1**

**10** [1] - 15:2
**1019** [1] - 28:21
**1073** [1] - 16:17
**1089** [1] - 16:23
**111(a)(1** [1] - 5:20
**1158** [1] - 17:2
**1185** [1] - 17:5
**12254** [1] - 1:22
**14** [14] - 7:12, 8:14, 8:23, 9:9, 12:2, 12:9, 13:16, 14:24, 15:14, 15:21, 16:7, 19:14, 24:22, 27:11
**14th** [3] - 8:16, 10:22, 27:7
**15** [3] - 8:11, 8:21, 9:8
**151** [1] - 17:5
**16th** [1] - 13:3
**18** [1] - 5:20
**1987** [1] - 29:22
**1998)** [1] - 17:6
**19th** [1] - 10:23
**1ST** [1] - 1:23

**2**

**20** [2] - 1:18, 4:1
**2005)** [1] - 17:2
**2008)** [1] - 16:18
**2020)** [1] - 28:22
**2025** [26] - 1:18, 4:1, 5:17, 5:23, 5:25, 7:4, 7:8, 7:12, 8:10, 8:11, 8:14, 8:17, 8:23, 9:8, 10:23, 11:14, 12:2, 12:9, 13:16, 15:14, 15:19, 15:21, 15:22, 16:2, 19:14, 27:11
**213** [1] - 1:24
**213)894-2854** [2] - 2:17, 2:21
**213)894-6159** [1] - 2:7
**213)894-6595** [1] - 2:12
**230** [1] - 13:23
**25-00154-SPG** [2] - 1:10, 36:6
**25-00154-SPG-1** [1] - 4:5
**25th** [6] - 7:4, 8:10, 11:14, 15:19, 15:22, 16:2
**28** [1] - 36:13
**2ND** [2] - 2:16, 2:20

**3**

**312** [2] - 2:6, 2:10
**321** [2] - 2:16, 2:20
**350** [1] - 1:23

**4**

**40** [1] - 33:13
**431** [1] - 17:2
**44** [1] - 29:22
**4455** [1] - 1:23
**483** [1] - 29:21
**4th** [1] - 7:8

**5**

**5** [4] - 3:4, 5:9, 7:15, 12:10
**524** [1] - 16:17

**6**

**6** [1] - 13:24

**7**

**753** [1] - 36:12
**7th** [1] - 5:17

**8**

**894-2739** [1] - 1:24

**9**

**9** [1] - 15:2
**90012** [5] - 1:24, 2:7, 2:11, 2:16, 2:20
**951** [1] - 16:23
**968** [1] - 28:21
**98** [2] - 1:16, 3:4
**9:08** [1] - 4:3

**A**

**A.M** [1] - 4:3
**able** [3] - 30:14, 30:20, 33:10
**ABOVE** [1] - 36:15
**ABOVE-ENTITLED** [1] - 36:15
**accepts** [1] - 27:4
**access** [1] - 23:4
**accidental** [2] - 17:23, 29:4
**accomplices** [1] - 28:20
**according** [10] - 8:2, 8:4, 8:21, 8:25, 9:4, 9:7, 9:13, 9:24, 19:7, 20:9
**account** [4] - 19:24, 21:20, 23:7, 23:19
**accounts** [2] - 9:11, 19:25
**accused** [1] - 26:14
**accused's** [1] - 30:7
**acknowledged** [1] - 9:5
**acknowledgement** [2] - 9:23, 22:6
**acknowledges** [1] - 31:12
**act** [1] - 6:12
**action** [2] - 18:7, 29:13
**actions** [12] - 7:4, 15:21, 16:7, 21:13, 23:3, 26:9, 26:12, 26:16, 26:25, 32:25, 33:23
**active** [2] - 19:15, 30:24
**actors'** [1] - 31:18
**acts** [1] - 24:20
**Adelanto** [1] - 7:11
**adjourned** [1] - 35:1
**adjudicating** [1] - 33:11
**administered** [1] - 18:25
**administrative** [2] - 6:5, 19:17
**admissibility** [1] - 24:23
**admit** [1] - 18:25
**admits** [2] - 6:20, 20:12
**admitted** [4] - 5:12, 13:6, 13:23, 22:21
**admittedly** [1] - 26:13
**advanced** [1] - 34:11
**adversary** [1] - 29:25
**advised** [1] - 12:20
**affirming** [1] - 13:4
**afraid** [2] - 16:8, 30:12
**Agent** [7] - 7:18, 7:21, 7:23, 8:12, 11:2, 24:15, 24:25
**agent** [1] - 27:10
**aggressive** [1] - 20:11
**agreed** [2] - 9:12, 13:1
**air** [5] - 14:3, 14:15, 21:7, 22:23, 24:4
**alert** [1] - 6:18
**allegations** [4] - 10:24, 12:23, 32:18, 33:5
**alleged** [2] - 31:7, 32:15
**allegedly** [1] - 7:1
**alleges** [2] - 6:10, 6:14
**alleging** [1] - 17:3
**altercation** [1] - 18:20
**alternative** [2] - 31:11, 31:15
**Amendment** [3] - 12:21, 30:3, 30:6
**America** [1] - 4:5
**AMERICA** [3] - 1:7, 2:4, 36:5
**amount** [2] - 5:11, 27:6
**amounted** [1] - 24:8
**amounting** [1] - 18:19
**amounts** [4] - 16:13, 17:1, 18:14, 27:17
**AND** [3] - 36:10, 36:13, 36:15
**AND/OR** [1] - 36:19
**Angeles** [2] - 6:1, 7:22
**ANGELES** [7] - 1:17, 1:24, 2:7, 2:11, 2:16, 2:20, 4:1
**angle** [1] - 10:11
**ANY** [1] - 36:18
**appearances** [1] - 4:8
**appeared** [2] - 7:12, 23:14
**appearing** [2] - 14:10, 14:14
**appointment** [1] - 12:4
**Appointment** [1] - 6:3
**appreciates** [2] - 32:24, 33:8
**appropriate** [3] - 17:13, 26:25, 27:8
**approved** [1] - 4:25
**April** [1] - 7:8
**ARE** [1] - 36:19
**area** [9] - 8:3, 10:20, 14:1, 15:3, 15:5, 15:23, 18:23, 19:9, 30:13
**areas** [1] - 7:3
**argue** [1] - 28:1
**argued** [1] - 28:8
**argues** [1] - 16:9
**argument** [1] - 7:16
**arguments** [3] - 5:13, 19:7, 34:22
**arise** [1] - 28:2
**arises** [1] - 5:24
**arising** [1] - 29:19
**Arkansas** [1] - 29:21
**arm** [2] - 15:1, 20:10
**arrest** [13] - 6:5, 6:8, 7:4, 11:12, 11:14, 11:19, 11:22, 11:25, 18:21, 19:2, 21:21, 21:25, 23:1
**arrested** [1] - 6:19
**arresting** [2] - 6:11, 6:13
**arrival** [1] - 7:24
**arrived** [3] - 5:25, 8:4, 10:21
**arriving** [1] - 6:3
**articulated** [1] - 29:14
**assault** [3] - 5:18, 15:24, 32:18
**assembly** [1] - 33:15
**asserted** [1] - 7:7
**assertion** [1] - 28:10
**assertions** [1] - 30:19
**assistance** [1] - 14:23
**assisted** [1] - 4:19
**assumed** [1] - 6:17
**asylum** [2] - 5:22
**AT** [1] - 4:3
**attempt** [1] - 31:25
**attending** [1] - 8:5
**ATTORNEY** [2] - 2:5, 2:9
**attorney** [1] - 12:23
**attorneys** [1] - 34:20
**attributable** [1] - 27:16
**audio** [1] - 10:18
**AUSA** [1] - 4:11
**AUSAs** [1] - 4:10
**authority** [3] - 17:18, 18:8, 28:3
**available** [2] - 18:7, 29:13

**B**

**b)** [1] - 5:20
**bad** [2] - 24:20, 25:22
**Barrera** [1] - 16:23
**Barrera-Moreno** [1] - 16:23
**based** [4] - 11:16, 18:11, 24:5, 27:15
**basis** [3] - 17:8, 27:13, 28:2
**battered** [1] - 26:14
**batterer** [1] - 26:14
**bear** [2] - 5:16, 32:4
**beat** [2] - 23:1, 30:14
**began** [1] - 9:12
**begin** [2] - 7:11, 20:7
**behalf** [2] - 4:18, 29:22
**BEHALF** [2] - 2:4, 2:14
**behavior** [4] - 19:21, 20:6, 29:6
**behind** [1] - 13:21
**believes** [1] - 15:25
**between** [7] - 8:12, 8:19, 10:16, 11:4, 25:7, 26:6, 31:7
**beyond** [1] - 32:2
**bit** [2] - 6:14, 19:2
**biting** [2] - 6:22, 6:24

**bodily** [1] - 5:19
**bottom** [1] - 10:15
**briefing** [2] - 19:8, 28:9
**bruising** [1] - 8:8
**Building** [3] - 6:1, 6:4, 7:3
**Bundy** [1] - 28:21
**burden** [2] - 31:24, 32:4
**BUSTILLOS** [3] - 1:21, 36:10, 36:23
**busy** [1] - 26:10
**BY** [4] - 2:5, 2:10, 2:15, 2:19

## C

**C.S.R** [1] - 1:22
**CA** [4] - 2:7, 2:11, 2:16, 2:20
**California** [2] - 6:1, 7:11
**CALIFORNIA** [5] - 1:2, 1:17, 1:24, 4:1, 36:12
**calm** [1] - 19:19
**camera** [4] - 10:11, 10:14, 21:2, 21:3
**cameras** [4] - 7:2, 15:24, 18:24, 30:14
**candidly** [1] - 33:10
**capture** [1] - 21:3
**captures** [5] - 10:8, 10:19, 14:6, 14:12, 21:5
**care** [1] - 32:22
**Carlos** [2] - 9:9, 19:22
**case** [27] - 5:13, 11:13, 12:6, 13:18, 17:15, 18:12, 18:13, 18:21, 19:6, 24:13, 24:14, 28:5, 28:12, 32:15, 32:18, 32:19, 33:9, 33:12, 33:16, 33:18, 34:8, 34:12, 34:15, 34:21
**cases** [1] - 27:23
**caused** [2] - 22:15, 27:20
**cautioned** [1] - 17:18
**center** [1] - 18:21
**CENTRAL** [2] - 1:2, 36:11
**central** [1] - 19:6
**certified** [1] - 5:4
**CERTIFY** [1] - 36:12
**challenged** [2] - 17:21, 29:3
**Chapman** [2] - 16:17, 17:15
**charged** [1] - 33:22
**CHARGED** [1] - 36:18
**charging** [1] - 17:17
**choice** [3] - 16:25, 18:15, 24:10
**chose** [5] - 14:19, 16:6, 23:10, 23:20, 30:21
**chosen** [1] - 26:8
**Circuit** [5] - 16:18, 17:2, 17:6, 17:18, 28:22
**CIRCUIT** [1] - 36:18
**circumstances** [6] - 12:24, 18:10, 18:11, 24:6, 31:7, 32:13
**cites** [1] - 27:23
**claim** [1] - 16:6
**clarify** [1] - 23:9
**clause** [1] - 30:3
**clear** [3] - 22:21, 25:22, 32:17
**clenched** [5] - 14:2, 14:15, 21:6, 22:22, 24:4
**close** [3] - 14:8, 15:6, 20:25
**closely** [1] - 32:22
**closest** [1] - 10:15
**Code** [1] - 5:20
**CODE** [1] - 36:13
**coercive** [1] - 10:4
**COIT** [4] - 2:15, 4:16, 34:19, 34:23
**Coit** [1] - 4:17
**combined** [1] - 15:21
**communicating** [1] - 26:3
**community** [1] - 33:15
**companion** [1] - 6:18
**compulsory** [1] - 30:3
**conceded** [1] - 28:11
**concludes** [3] - 18:12, 24:5, 34:2
**conduct** [29] - 12:14, 14:19, 16:13, 16:14, 16:20, 17:15, 17:21, 17:22, 17:23, 18:13, 18:19, 19:12, 20:4, 24:6, 25:23, 26:18, 26:24, 27:16, 27:21, 28:1, 28:14, 28:16, 29:3, 29:5, 29:15, 32:15, 34:2, 34:9
**conducted** [1] - 25:18
**CONFERENCE** [2] - 36:17, 36:20
**CONFORMANCE** [2] - 36:16, 36:19
**confrontational** [1] - 20:22
**consequences** [2] - 28:1, 29:19
**consider** [3] - 23:21, 23:24, 23:25
**considerations** [1] - 17:14
**considered** [2] - 24:3, 25:25
**considering** [1] - 5:12
**constant** [3] - 31:20, 32:25
**Constitution** [1] - 29:24
**constitutional** [4] - 17:12, 18:2, 26:19, 29:8
**consult** [1] - 12:22
**contact** [2] - 13:13, 25:9
**contained** [1] - 10:24
**continued** [2] - 27:21, 32:22
**contradicted** [1] - 20:2
**contrary** [3] - 23:24, 25:25, 27:6
**conversation** [2] - 9:5, 12:3
**conviction** [1] - 17:13
**CORRECT** [1] - 36:14
**correctly** [1] - 16:9
**correspondence** [1] - 8:18
**corresponding** [1] - 10:18
**corroborate** [1] - 23:19
**counsel** [23] - 4:7, 4:11, 4:19, 4:21, 8:12, 8:19, 8:23, 11:3, 12:5, 12:8, 12:17, 13:2, 13:12, 13:14, 14:17, 26:3, 26:7, 26:21, 26:22, 28:8, 28:11, 33:17
**counsel's** [3] - 7:19, 25:1, 26:24
**Court** [45] - 5:11, 5:16, 7:15, 10:23, 11:16, 12:7, 12:20, 16:15, 16:19, 18:12, 18:17, 20:3, 20:14, 23:21, 23:25, 24:3, 24:5, 24:7, 24:11, 25:25, 26:8, 26:17, 27:4, 27:15, 28:3, 28:4, 28:13, 29:15, 29:21, 30:23, 31:2, 31:10, 31:12, 32:12, 32:17, 32:23, 33:2, 33:4, 33:8, 33:16, 33:19, 34:1, 34:8, 34:14
**COURT** [11] - 1:1, 1:21, 4:3, 4:15, 4:22, 5:1, 5:6, 34:20, 34:25, 36:10, 36:11
**court** [6] - 7:12, 16:11, 17:7, 17:10, 26:2, 33:20
**Court's** [11] - 14:5, 18:3, 18:8, 20:20, 27:14, 28:14, 28:17, 29:9, 32:7, 34:7
**COURTHOUSE** [1] - 1:22
**Courthouse** [2] - 7:13, 7:22
**COURTROOM** [1] - 4:4
**courtroom** [3] - 7:13, 23:16, 32:6
**courts** [4] - 18:9, 28:19, 30:5
**covering** [3] - 9:3, 9:17, 9:22
**CR** [3] - 1:10, 4:5, 36:6
**creating** [1] - 30:25
**credibility** [1] - 32:1
**credible** [3] - 19:24, 23:23, 27:19
**credits** [1] - 20:14
**criminal** [3] - 29:23, 30:5, 34:5
**cross** [2] - 16:4, 33:14
**cross-examine** [1] - 16:4
**cross-section** [1] - 33:14
**custody** [6] - 7:9, 8:24, 14:25, 25:11, 27:22, 30:24
**Customs** [2] - 6:2, 6:7

## D

**damage** [1] - 31:16
**DATE** [1] - 36:23
**date** [1] - 19:15
**days** [3] - 20:6, 21:18, 22:2
**decide** [2] - 30:10, 33:18
**decision** [1] - 27:13
**declined** [1] - 12:13
**defend** [1] - 33:7
**Defendant** [1] - 1:13
**defendant** [13] - 5:17, 15:3, 15:7, 17:3, 18:4, 18:23, 19:14, 20:9, 27:24, 29:10, 30:4, 31:5
**defendant's** [7] - 12:17, 15:1, 15:6, 18:15, 19:7, 20:13, 28:6
**DEFENDANTS** [1] - 2:14
**DEFENDER** [2] - 2:15, 2:19
**Defender's** [1] - 4:17
**defense** [5] - 7:8, 16:2, 19:7, 30:9, 31:9
**Defense** [22] - 8:8, 8:19, 10:7, 11:1, 11:3, 11:10, 12:12, 12:17, 13:2, 13:14, 14:21, 16:24, 21:12, 24:20, 25:20, 26:21, 27:3, 27:8, 28:7, 31:24, 32:16, 34:19
**Defense's** [4] - 5:9, 8:7, 11:7, 12:23
**delayed** [1] - 26:22
**demonstrate** [5] - 17:4, 17:21, 23:4, 31:14, 32:1
**demonstrated** [2] - 17:25, 29:7
**demonstrates** [1] - 29:3
**depicting** [1] - 8:14
**depicts** [3] - 10:10, 23:11, 25:11
**DEPOSIT** [1] - 36:19
**DEPUTY** [1] - 4:4
**described** [2] - 9:18, 15:2
**desirable** [1] - 31:13
**desk** [1] - 9:14
**despite** [1] - 25:6
**detainee** [2] - 8:5, 9:10
**detainer** [1] - 7:10
**detention** [5] - 9:11, 13:16, 14:7, 25:12, 26:4
**deter** [2] - 17:14, 32:14
**determination** [1] - 27:18
**determine** [1] - 33:21
**difficulties** [1] - 32:24
**direction** [3] - 14:3, 14:16, 21:9
**disciplinary** [2] - 8:17, 19:13
**disclose** [1] - 27:7
**disclosing** [2] - 26:22, 26:25
**discussed** [3] - 24:18, 24:23, 28:14
**DISMISS** [2] - 1:16, 3:4
**dismiss** [8] - 5:10, 8:7, 16:11, 16:16, 17:8, 28:3, 28:24, 34:8
**dismissal** [7] - 17:16, 18:3, 25:20, 28:16, 29:9, 31:12, 32:16
**dismissed** [1] - 16:10
**dismisses** [1] - 34:15
**disobedience** [1] - 28:20
**dispute** [1] - 32:19
**disregard** [3] - 18:1, 26:18, 29:7
**dissuade** [1] - 23:6
**distance** [1] - 20:25
**distracted** [1] - 26:10
**district** [2] - 16:11, 17:9
**DISTRICT** [5] - 1:1, 1:2, 1:5, 36:11
**DIVISION** [1] - 1:3

DO [2] - 11:13, 36:12
documentary [1] - 10:25
documented [1] - 11:20
domestic [2] - 26:15, 26:16
done [1] - 34:12
door [1] - 10:12
doubt [1] - 32:3
down [2] - 14:4, 19:2
Downtown [1] - 7:22
drastic [1] - 31:13
drawn [1] - 33:14
dropped [1] - 6:12
due [18] - 16:13, 16:15, 16:20, 17:1, 18:7, 18:16, 18:19, 26:10, 26:11, 27:14, 28:2, 28:10, 28:15, 29:25, 32:10, 33:22, 34:6, 34:10
during [25] - 7:18, 10:2, 11:22, 11:23, 11:25, 12:8, 12:12, 12:14, 12:16, 14:21, 16:8, 18:21, 19:1, 19:23, 20:16, 21:19, 23:7, 23:12, 23:16, 24:22, 24:25, 28:9, 28:11, 30:11, 30:20
duties [1] - 33:1
duty [2] - 19:15, 30:24

E

Earp [1] - 17:1
earshot [1] - 23:14
easily [1] - 23:4
EAST [2] - 2:16, 2:20
effort [2] - 23:18, 33:8
egregious [1] - 28:5
either [2] - 16:10, 18:7
elected [1] - 21:24
elects [1] - 32:9
element [1] - 31:10
elements [1] - 17:20
elicit [1] - 25:15
emphasizes [1] - 28:13
empowered [1] - 17:8
encounter [1] - 31:7
encroaches [1] - 17:17
enforcement [3] - 32:19, 32:23, 33:4
Enforcement [1] - 6:7
engage [2] - 19:20, 23:3
engaged [3] - 12:2, 18:18, 21:13
engages [1] - 20:22
engaging [2] - 14:19, 25:23
English [4] - 6:5, 6:6, 15:12, 22:12
ensuring [1] - 17:13
entered [1] - 7:6
ENTITLED [1] - 36:15
entrance [1] - 7:25
equivalent [1] - 26:13
escort [2] - 9:10, 9:12
escorting [2] - 14:6, 20:10
especially [1] - 19:24
essential [1] - 29:25
essentially [2] - 12:23, 26:12
establish [2] - 17:24, 29:6
established [1] - 16:23
eve [1] - 26:14
events [3] - 5:24, 19:4, 27:5
evidence [10] - 5:12, 7:15, 10:25, 11:8, 17:5, 23:23, 24:21, 24:23, 27:5, 33:20
evidentiary [9] - 5:10, 10:24, 11:8, 12:15, 19:16, 19:23, 23:16, 30:11, 30:21
evinced [1] - 26:18
examination [1] - 12:14
examine [1] - 16:4
exclude [1] - 12:10
exercise [5] - 17:10, 28:3, 28:18, 31:10, 34:7
Exhibit [3] - 8:11, 8:13, 8:18
Exhibits [2] - 8:15, 8:20
existing [1] - 28:5
exiting [2] - 10:12, 21:5
explain [1] - 21:11
explicit [1] - 10:4
expression [1] - 9:23
extremely [2] - 18:9, 28:10
eyewitness [1] - 19:3

F

F.2d [1] - 16:23
F.3d [4] - 16:17, 17:2, 17:5, 28:21
face [24] - 6:16, 6:21, 6:25, 8:9, 9:3, 9:17, 9:21, 9:22, 11:21, 13:24, 14:8, 15:6, 18:23, 20:13, 20:19, 21:3, 21:6, 22:7, 22:8, 32:25, 33:1
facility [13] - 7:10, 7:23, 8:1, 8:14, 9:11, 9:13, 10:21, 13:16, 14:7, 15:4, 25:12, 26:4
facing [1] - 25:20
fact [5] - 11:25, 18:9, 24:7, 25:1, 28:12
fact-specific [1] - 18:9
facts [2] - 28:4, 33:18
failed [1] - 31:14
fair [2] - 29:25, 33:17
false [1] - 23:23
favor [2] - 30:5, 30:10
favorable [1] - 30:8
fear [5] - 15:22, 27:19, 29:17, 31:20, 32:10
February [7] - 5:25, 7:4, 8:10, 11:14, 15:19, 15:22, 16:2
federal [5] - 5:18, 7:17, 17:7, 28:19, 32:23
FEDERAL [2] - 2:14, 2:18
Federal [6] - 4:17, 6:1, 6:4, 7:3, 7:13, 7:21
FEE [1] - 36:18
FEES [1] - 36:18
feet [2] - 10:13, 13:22
Ferkelman [2] - 4:24, 5:4
few [1] - 26:7
Fifth [1] - 12:21
file [2] - 4:25, 12:11
filed [1] - 8:7
files [1] - 7:16
finally [4] - 14:21, 18:6, 21:5, 29:12
Finally [1] - 32:5
findings [2] - 27:14, 33:3
finger [6] - 6:15, 6:23, 14:11, 19:2, 20:18
First [2] - 7:13, 7:21
first [9] - 9:8, 10:8, 11:10, 13:3, 16:11, 16:19, 17:21, 20:24, 29:2
first-line [1] - 9:8
fist [6] - 14:2, 14:15, 21:11, 22:23, 22:25, 24:4
flagrant [8] - 17:22, 17:24, 17:25, 20:8, 29:3, 29:6, 29:15, 34:9
Flagrant [1] - 29:6
FLOOR [2] - 2:6, 2:11
following [2] - 7:20, 17:20
follows [3] - 5:16, 11:9, 18:17
footage [3] - 10:10, 10:15, 10:17
FOR [3] - 36:10, 36:11, 36:18
force [5] - 11:15, 15:2, 24:13, 24:24, 33:6
forcefully [1] - 20:10
foregoing [2] - 34:1, 34:14
FOREGOING [1] - 36:13
FORMAT [1] - 36:16
forth [1] - 14:9
forward [3] - 33:10, 33:17, 33:19
Fourteenth [1] - 30:6
FPS [1] - 11:19
fractured [1] - 6:23
free [4] - 16:25, 18:15, 24:9, 27:18
freely [2] - 31:6, 31:20
frightened [1] - 15:16
front [1] - 9:14
Fuentes [2] - 9:9, 19:22
future [3] - 17:14, 30:25

G

GARNETT [1] - 1:5
generally [1] - 33:24
gesture [2] - 21:1, 22:19
gestures [1] - 10:5
given [3] - 12:23, 29:14, 32:7
Government [59] - 4:7, 4:11, 5:17, 6:10, 6:14, 6:20, 8:12, 8:19, 8:22, 11:5, 12:5, 12:13, 13:9, 13:12, 14:17, 15:23, 16:3, 16:9, 16:12, 16:20, 16:24, 17:9, 17:22, 17:23, 18:13, 18:14, 21:12, 23:8, 23:9, 23:17, 23:19, 23:24, 24:8, 25:1, 25:15, 26:6, 26:20, 26:22, 26:24, 27:3, 27:7, 27:9, 27:16, 27:23, 28:8, 28:11, 29:3, 29:5, 29:18, 30:18, 30:21, 31:5, 31:14, 32:3, 32:12, 33:24, 34:12, 34:17
Government's [17] - 7:14, 7:19, 11:1, 12:8, 12:9, 19:6, 26:19, 27:4, 28:16, 29:15, 31:16, 31:17, 31:18, 31:23, 32:5, 34:2, 34:9
grabbed [1] - 20:9
grants [1] - 30:4
grossly [1] - 16:21
ground [3] - 16:12, 16:19, 17:7
grounds [2] - 16:11, 18:8
guaranteed [1] - 30:5
guilty [4] - 7:6, 32:2, 33:22

H

halfway [2] - 9:13, 13:20
hallway [7] - 6:11, 10:8, 10:12, 14:4, 14:7, 14:13, 21:6
hand [5] - 6:16, 20:18, 21:2, 22:8, 22:19
handcuffs [1] - 6:8
handed [2] - 25:3, 25:16
handing [2] - 12:1, 26:13
HARI [4] - 2:5, 4:9, 34:17, 34:24
Hari [1] - 4:10
harm [1] - 34:12
head [7] - 6:21, 6:25, 8:9, 11:21, 14:9, 20:17
HEARING [2] - 1:16, 3:4
hearing [23] - 5:10, 7:14, 7:19, 7:20, 10:24, 11:8, 11:23, 12:9, 12:12, 12:15, 12:16, 14:21, 19:16, 19:23, 23:17, 24:22, 24:25, 25:2, 26:3, 28:9, 28:11, 30:11, 30:21
HELD [1] - 36:15
held [3] - 7:10, 10:23, 21:6
Henthorn [1] - 26:2
HEREBY [1] - 36:12
himself [4] - 4:23, 30:9, 31:8, 33:7
Hisle [125] - 6:6, 6:21, 7:17, 7:24, 8:1, 8:2, 8:4, 8:9, 8:13, 8:16, 8:22, 8:25, 9:1, 9:2, 9:4, 9:8, 9:10, 9:11, 9:13, 9:14, 9:16, 9:18, 9:20, 9:21, 9:24, 10:1, 10:10, 10:16, 11:2, 11:5, 11:14, 12:2, 12:3, 12:16, 12:17, 12:19, 12:21, 12:25, 13:2, 13:3, 13:5, 13:8, 13:17, 13:22, 14:1, 14:4, 14:6, 14:7, 14:11, 14:12, 14:16, 14:18, 14:20, 14:25, 15:1, 15:3, 15:6, 15:8, 15:11, 15:15, 15:18, 18:18, 18:20, 18:22, 19:3, 19:8,


39

19:10, 19:12, 19:18, 20:9, 20:12, 20:17, 20:23, 21:6, 21:9, 21:10, 21:13, 21:14, 21:16, 21:18, 21:22, 22:1, 22:3, 22:4, 22:5, 22:6, 22:10, 22:11, 22:13, 22:15, 22:17, 22:22, 22:24, 23:3, 23:9, 23:13, 24:16, 24:18, 25:2, 25:3, 25:4, 25:6, 25:7, 25:9, 25:14, 25:17, 25:18, 26:6, 26:23, 26:24, 27:11, 30:12, 30:24, 31:2, 31:8, 31:25, 33:23

**Hisle's** [30] - 11:17, 12:11, 13:10, 13:15, 14:9, 15:12, 15:20, 16:7, 18:12, 19:12, 19:23, 20:1, 20:4, 20:15, 20:16, 20:21, 21:3, 23:19, 23:22, 24:1, 24:4, 24:6, 24:12, 24:13, 24:19, 24:24, 26:25, 27:16, 27:20, 31:3

**history** [1] - 25:7

**hold** [1] - 15:1

**holding** [2] - 7:22, 7:25

**Honor** [8] - 4:9, 4:13, 4:14, 4:16, 34:18, 34:19, 34:23, 34:24

**HONORABLE** [1] - 1:5

**hours** [3] - 12:5, 25:5, 26:7

## I

**ICE** [15] - 6:8, 7:9, 7:10, 7:22, 7:25, 8:14, 8:17, 13:16, 15:4, 15:25, 19:11, 19:13, 27:21, 30:15, 30:23

**identify** [1] - 4:23

**identity** [1] - 13:18

**illegal** [1] - 17:15

**Immigration** [2] - 6:2, 6:7

**immigration** [1] - 7:9

**impair** [1] - 31:22

**impaired** [1] - 32:8

**impairing** [1] - 31:6

**impartial** [1] - 33:17

**impeachment** [2] - 24:21, 24:23

**implement** [1] - 17:10

**implications** [1] - 33:3

**implied** [1] - 10:4

**important** [3] - 19:5, 21:14, 22:1

**importantly** [2] - 5:9, 30:17

**improperly** [1] - 31:24

**imputed** [3] - 18:13, 31:4, 33:24

**IN** [5] - 4:3, 36:10, 36:15, 36:16, 36:19

**inches** [3] - 13:24, 20:12, 22:7

**incident** [12] - 8:15, 8:17, 11:20, 15:17, 19:25, 20:2, 26:16, 27:7, 27:10, 27:11, 32:21

**included** [1] - 30:7

**including** [4] - 11:13, 13:7, 16:5, 24:19

**incorrect** [1] - 27:3

**indicated** [1] - 12:25

**indicted** [1] - 5:17

**indictment** [7] - 5:24, 16:10, 16:12, 17:8, 17:16, 28:24, 34:15

**individual** [1] - 26:14

**individual's** [1] - 26:15

**infer** [1] - 26:9

**infers** [1] - 11:16

**infliction** [1] - 5:19

**information** [4] - 12:10, 13:6, 26:8, 27:4

**inherent** [3] - 18:8, 28:3, 32:24

**initiated** [2] - 6:8, 19:11

**initiating** [1] - 27:1

**injuries** [1] - 11:24

**injuring** [1] - 18:24

**injury** [2] - 5:19, 32:20

**innocence** [1] - 32:4

**innocent** [1] - 32:2

**inordinate** [1] - 5:11

**inquiry** [1] - 18:8

**instead** [1] - 25:16

**insufficient** [2] - 17:24, 29:5

**intake** [9] - 8:3, 10:9, 10:13, 10:14, 13:20, 15:3, 15:5, 19:9, 25:19

**integrity** [3] - 17:12, 28:18, 28:25

**intended** [1] - 21:16

**intent** [2] - 14:18, 26:11

**intentionally** [1] - 26:22

**intentions** [2] - 23:9, 25:23

**interacted** [2] - 10:10, 23:13

**interacting** [1] - 19:19

**interaction** [9] - 9:6, 10:3, 10:16, 11:4, 13:15, 15:15, 19:14, 23:15, 30:4

**interactions** [1] - 31:1

**intercom** [1] - 7:24

**interfered** [2] - 28:6, 34:4

**interference** [5] - 16:24, 17:3, 18:15, 24:9, 27:17

**interpreter** [4] - 4:20, 4:23, 5:5, 14:24

**INTERPRETER** [2] - 4:24, 5:3

**interview** [3] - 5:22, 25:4, 27:11

**interviewed** [1] - 27:12

**intimidate** [1] - 21:16

**intimidated** [1] - 16:7

**intimidating** [5] - 10:4, 19:20, 20:5, 20:6, 24:8

**investigation** [5] - 8:18, 19:11, 19:13, 27:1, 27:2

**involved** [2] - 18:20, 33:4

**involvement** [1] - 24:12

**involving** [2] - 32:18, 33:5

**IS** [2] - 36:13, 36:16

**issue** [1] - 16:5

**issues** [1] - 16:4

## J

**jobs** [1] - 32:24

**joined** [1] - 4:11

**JUDGE** [1] - 1:5

**judicial** [2] - 17:12, 29:1

**JUDICIAL** [2] - 36:17, 36:20

**July** [1] - 5:23

**jurors** [1] - 33:14

**jury** [4] - 17:14, 33:15, 33:18, 33:21

**justice** [2] - 16:22, 34:4

**justifies** [1] - 28:16

## K

**key** [1] - 29:18

**Kharikova** [1] - 5:4

**kind** [1] - 10:6

**knowingly** [1] - 26:13

**knowledge** [2] - 25:7, 25:8

## L

**lacerations** [2] - 6:25, 11:21

**lack** [1] - 32:1

**language** [2] - 4:20, 14:24

**late** [1] - 31:18

**law** [7] - 5:13, 28:5, 28:21, 29:25, 32:18, 32:23, 33:4

**layman** [1] - 18:25

**least** [3] - 21:9, 23:11, 23:13

**leave** [1] - 19:17

**leaving** [1] - 16:6

**led** [2] - 6:11, 15:3

**left** [4] - 15:1, 23:21, 23:24, 23:25

**lengthy** [1] - 26:2

**less** [1] - 31:13

**LESS** [1] - 36:18

**lesser** [5] - 18:6, 29:12, 31:11, 31:15, 34:11

**letter** [5] - 9:19, 10:1, 13:3, 13:5, 13:6

**letters** [2] - 19:21, 19:24

**level** [2] - 16:15, 33:6

**light** [3] - 19:25, 23:23, 32:12

**lightly** [3] - 32:17, 33:3, 33:5

**likely** [2] - 22:12, 25:19

**limine** [3] - 5:9, 7:14, 12:10

**line** [1] - 9:8

**linger** [1] - 22:17

**lingered** [1] - 14:1

**lingering** [1] - 14:13

**loading** [1] - 10:20

**located** [3] - 10:9, 10:11, 10:12

**logically** [1] - 30:7

**longtime** [1] - 6:18

**looked** [5] - 9:1, 9:20, 14:4, 15:7, 22:24

**looking** [10] - 14:3, 14:15, 14:16, 18:9, 21:7, 21:8, 22:23, 33:10, 33:16, 33:19

**Los** [2] - 6:1, 7:22

**LOS** [7] - 1:17, 1:24, 2:7, 2:11, 2:16, 2:20, 4:1

**lowered** [2] - 9:21, 22:7

## M

**Maksim** [3] - 4:5, 4:18, 5:18

**MAKSIM** [3] - 1:12, 2:14, 36:7

**March** [1] - 5:17

**MARIA** [3] - 1:21, 36:10, 36:23

**mask** [2] - 15:9, 22:7

**material** [3] - 16:4, 27:5, 30:8

**materials** [1] - 11:12

**MATTER** [1] - 36:15

**MAY** [2] - 1:18, 4:1

**meet** [1] - 12:5

**meeting** [1] - 8:12

**memorandum** [2] - 8:15, 9:7

**mental** [1] - 31:22

**merely** [2] - 17:23, 29:4

**merits** [1] - 33:11

**met** [2] - 13:9, 24:15

**Michael** [1] - 4:12

**minimum** [2] - 17:25, 29:7

**misbehavior** [2] - 17:24, 17:25

**misconduct** [12] - 17:4, 17:9, 17:22, 26:23, 28:25, 29:4, 29:16, 29:19, 31:3, 31:16, 31:19, 34:6

**moment** [1] - 9:14

**Moreno** [1] - 16:23

**morning** [8] - 4:9, 4:13, 4:14, 4:15, 4:16, 4:22, 5:3, 33:13

**Morse** [1] - 4:12

**MORSE** [1] - 4:13

**most** [1] - 10:15

**MOTION** [2] - 1:16, 3:4

**motion** [13] - 5:8, 5:10, 5:14, 5:15, 7:14, 8:7, 10:25, 12:9, 12:17, 16:5, 25:20

**motions** [1] - 5:8

**mouth** [1] - 9:17

**moving** [3] - 14:9, 14:12, 20:17

**MR** [5] - 4:9, 4:13, 4:14, 34:17, 34:24

**MS** [3] - 4:16, 34:19, 34:23

**multiple** [6] - 6:21, 6:25, 11:21, 18:23, 24:2, 24:16

**must** [4] - 16:21, 17:21, 18:6, 29:12

## N

**namely** [1] - 31:11

**Natalia** [1] - 5:4

**national** [1] - 5:21

**near** [1] - 20:18

**necessarily** [1] - 25:24

**necessary** [1] - 27:2

**need** [2] - 32:21, 33:7

**nefarious** [1] - 26:11

**negligent** [2] - 17:23,

29:5
NEIL [1] - 2:10
Neil [1] - 4:10
nevertheless [1] - 26:12
Ninth [5] - 16:18, 17:2, 17:6, 17:18, 28:22
none [3] - 33:24, 34:11, 34:17
nonetheless [1] - 16:16
normal [1] - 9:19
NORTH [2] - 2:6, 2:10
nose [1] - 9:17
notes [2] - 12:7, 30:23
Notice [1] - 6:3
notified [1] - 7:23
number [3] - 5:9, 7:15, 12:10

O

oath [3] - 4:25, 12:18, 14:22
obligations [3] - 18:2, 26:19, 29:8
obvious [1] - 20:7
occasions [1] - 24:16
occur [2] - 5:23, 25:21
occurred [4] - 7:5, 20:6, 21:20, 21:25
occurs [1] - 10:17
OF [17] - 1:2, 1:7, 1:15, 2:4, 2:4, 2:9, 2:14, 2:14, 2:18, 36:5, 36:11, 36:14, 36:17, 36:20
offense [1] - 33:22
Office [1] - 4:18
OFFICE [4] - 2:4, 2:9, 2:14, 2:18
Officer [153] - 6:15, 6:22, 7:24, 8:1, 8:2, 8:4, 8:9, 8:13, 8:16, 8:22, 8:25, 9:1, 9:2, 9:4, 9:8, 9:10, 9:11, 9:13, 9:14, 9:16, 9:18, 9:20, 9:21, 9:24, 10:1, 10:10, 10:16, 11:2, 11:5, 11:17, 12:2, 12:3, 12:11, 12:17, 12:19, 12:21, 12:25, 13:2, 13:3, 13:5, 13:8, 13:10, 13:12, 13:15, 13:17, 13:22, 14:1, 14:4, 14:6, 14:7, 14:9, 14:11, 14:12, 14:16, 14:18, 14:20, 14:25, 15:1, 15:3, 15:6, 15:8, 15:11, 15:12, 15:15, 15:18, 15:20, 16:7, 18:12, 18:18, 18:19, 18:22, 19:2, 19:3, 19:8, 19:10, 19:12, 19:18, 19:23, 20:1, 20:4, 20:9, 20:12, 20:15, 20:16, 20:17, 20:21, 20:23, 21:3, 21:6, 21:9, 21:10, 21:13, 21:14, 21:16, 21:18, 21:22, 22:1, 22:3, 22:4, 22:5, 22:6, 22:10, 22:11, 22:13, 22:15, 22:17, 22:22, 22:24, 23:3, 23:13, 23:19, 23:22, 24:1, 24:4, 24:6, 24:12, 24:13, 24:16, 24:19, 24:24, 25:2, 25:4, 25:6, 25:7, 25:9, 25:14, 25:17, 25:18, 26:6, 26:23, 26:24, 26:25, 27:11, 27:16, 27:20, 30:12, 30:24, 31:2, 31:3, 31:8, 31:25, 32:20, 33:23
officer [4] - 5:18, 6:23, 22:14, 25:10
Officers [4] - 6:6, 6:20, 7:17, 24:18
officers [13] - 6:12, 7:1, 15:25, 18:24, 23:12, 23:15, 23:18, 24:21, 25:12, 30:13, 30:15, 32:19, 33:4
officers' [1] - 11:15
OFFICIAL [3] - 1:21, 36:10, 36:23
officials [1] - 15:23
omitted [1] - 13:6
ON [2] - 2:4, 2:14
once [3] - 13:7, 13:25, 22:4
one [3] - 22:25, 23:14, 29:24
one's [1] - 29:22
opportunity [5] - 14:17, 16:3, 21:19, 21:22, 21:23
opposite [1] - 10:13
opposition [1] - 11:1
order [1] - 28:15
Ornoski [1] - 17:2
outrageous [5] - 16:12, 16:21, 18:18, 20:8, 34:3
outside [1] - 23:16
own [2] - 11:6, 29:22

P

PAGE [2] - 3:3, 36:16
part [2] - 8:17, 26:9
partial [1] - 9:17
participant [1] - 19:4
parties [3] - 10:20, 24:22, 33:9
parties' [1] - 5:13
passive [1] - 6:13
past [1] - 24:20
PEACE [1] - 1:5
pending [1] - 5:8
percipient [1] - 19:4
performing [1] - 33:1
period [1] - 23:12
perjury [1] - 27:25
personal [1] - 28:6
personnel [2] - 7:16, 12:11
pertaining [1] - 7:16
photographs [1] - 11:24
photos [1] - 24:16
physical [4] - 10:5, 15:24, 31:7, 31:21
pictures [1] - 8:8
place [5] - 5:24, 9:6, 22:22, 25:5, 26:6
placed [6] - 6:15, 7:9, 12:18, 14:22, 19:13, 19:16
placing [1] - 6:8
Plaintiffs [1] - 1:8
PLAINTIFFS [1] - 2:4
played [1] - 13:14
plea [1] - 7:6
point [2] - 14:11, 22:11
pointed [1] - 22:9
pointing [1] - 20:18
pointless [1] - 32:6
port [1] - 10:20
portions [1] - 13:14
possibility [2] - 7:7, 30:25
possible [2] - 19:7, 30:25
possibly [1] - 33:5
potential [1] - 31:21
pounds [1] - 13:23
power [7] - 17:10, 18:4, 28:17, 28:18, 28:23, 29:10, 34:7
powers [2] - 16:16, 31:11
preclude [1] - 7:15
prejudice [6] - 16:5, 16:10, 17:17, 18:5, 29:11, 34:15
prejudiced [2] - 29:16, 34:10
prejudices [1] - 31:5
preoccupied [1] - 26:10
preparation [3] - 12:6, 13:11, 26:5
prepare [1] - 27:10
prepared [1] - 5:14
preparing [1] - 26:5
preponderance [1] - 17:4
presence [1] - 27:21
present [8] - 7:18, 12:7, 12:12, 23:12, 23:16, 24:25, 25:12, 27:13
presented [2] - 6:5, 28:4
preserve [1] - 17:12
presiding [1] - 33:10
PRESIDING [1] - 1:5
presumed [2] - 25:8, 32:2
prevents [1] - 28:19
previous [1] - 15:17
previously [5] - 5:23, 18:20, 24:15, 28:23, 29:1
primarily [2] - 27:23, 33:23
probative [1] - 31:8
proceeding [1] - 35:1
PROCEEDINGS [2] - 1:15, 36:15
process [18] - 6:13, 16:13, 16:15, 16:20, 17:1, 18:7, 18:16, 18:19, 27:14, 28:2, 28:10, 28:15, 29:1, 29:25, 30:1, 30:3, 34:6, 34:10
processed [2] - 14:2, 22:18
processing [1] - 8:23
professionally [1] - 4:25
proffer [1] - 27:4
proffered [4] - 31:14, 31:17, 31:23, 32:11
prosecution [1] - 27:25
prosecution's [1] - 29:8
prosecutor's [2] - 17:17, 18:1
prosecutorial [3] - 17:9, 17:22, 29:4
prospective [1] - 33:14
Protective [1] - 7:17
protects [1] - 28:18
proven [1] - 32:2
providing [1] - 27:3
proving [1] - 32:4
provisions [1] - 29:23
proximity [1] - 14:8
public [1] - 6:11
PUBLIC [2] - 2:14, 2:18
Public [1] - 4:17
pump [1] - 22:23
pumped [3] - 14:2, 21:7, 24:4
pumping [1] - 14:14
punched [8] - 6:21, 8:10, 11:18, 15:18, 18:22, 19:1, 24:17
punching [1] - 7:1
purposes [1] - 5:15
pursuant [2] - 7:9, 28:16
PURSUANT [1] - 36:12
put [1] - 33:9
putting [1] - 20:18

Q

questioned [6] - 11:3, 13:2, 13:5, 21:10, 21:12, 30:18
questioning [1] - 13:17
questions [3] - 11:6, 23:8, 34:16
quote [6] - 9:14, 10:2, 15:15, 15:16, 15:17

R

R.A [1] - 2:5
Rahul [1] - 4:10
RAHUL [1] - 2:5
raise [1] - 10:3
raised [2] - 21:11, 22:8
rare [2] - 28:10, 28:12
rather [2] - 26:11, 28:7
ready [1] - 33:9
reason [1] - 33:2
reasonable [3] - 27:8, 27:19, 32:3
reasons [4] - 29:14, 30:20, 34:1, 34:14
received [3] - 7:25, 11:11, 22:5
receiving [1] - 33:20
recess [1] - 34:25
reckless [3] - 18:1, 26:18, 29:7
recklessness [1] - 31:4
recognition [1] - 25:6
recognize [2] - 9:2, 13:19
recognized [3] - 9:15, 17:11, 25:2
record [6] - 5:16, 18:17, 20:3, 24:11, 25:24, 27:15
rectifies [2] - 29:19, 34:12
rectify [2] - 31:15, 32:14
REDUCTION [1] - 36:19
refer [1] - 6:7
reference [1] - 10:20
regard [1] - 26:23
regarding [6] - 8:11, 8:16, 11:4, 11:12, 14:18, 24:1

**REGULATIONS** [2] - 36:16, 36:20
**reiterated** [1] - 13:19
**related** [2] - 19:14, 24:24
**remain** [1] - 12:21
**remains** [3] - 19:15, 30:23, 30:24
**remedial** [2] - 18:7, 29:13
**remedies** [7] - 31:12, 31:15, 31:17, 31:23, 32:11, 32:13, 34:11
**remedy** [5] - 17:11, 29:18, 31:13, 32:5, 32:9
**remember** [3] - 9:4, 15:13, 21:15
**remembered** [7] - 8:25, 9:19, 13:8, 13:25, 22:3, 22:5, 22:9
**remind** [1] - 22:25
**reminded** [1] - 25:3
**reminding** [1] - 12:3
**removed** [1] - 15:9
**repeatedly** [5] - 7:2, 11:18, 19:1, 20:21, 23:1
**report** [4] - 8:11, 8:21, 11:19, 27:10
**REPORTED** [1] - 36:14
**REPORTER** [3] - 1:21, 36:10, 36:23
**REPORTER'S** [1] - 1:15
**reports** [1] - 11:11
**representations** [1] - 13:4
**represented** [3] - 8:22, 10:1, 12:22
**represents** [1] - 28:25
**requested** [1] - 32:15
**requesting** [1] - 7:15
**required** [1] - 17:3
**resistance** [1] - 6:13
**respond** [1] - 15:8
**response** [2] - 6:2, 13:16
**responsibilities** [1] - 25:25
**rest** [1] - 17:13
**result** [4] - 6:24, 7:1, 32:21, 34:22
**resulted** [1] - 33:7
**resulting** [3] - 5:19, 7:4, 31:16
**retaliate** [2] - 15:25, 30:16
**retaliation** [2] - 27:20, 31:21
**return** [1] - 19:9
**returning** [1] - 20:24
**review** [2] - 14:5, 20:20
**reviewed** [3] - 11:17, 11:24, 20:21
**rights** [4] - 12:25, 18:16, 29:24, 31:22
**rise** [2] - 16:14, 28:15
**risk** [1] - 33:1
**Robles** [10] - 6:6, 6:15, 6:20, 7:17, 8:10, 11:13, 18:22, 24:18, 31:8, 32:20
**Robles's** [5] - 6:15, 6:22, 6:23, 11:17, 19:2
**Rock** [1] - 29:21
**room** [1] - 33:15
**roughly** [1] - 13:23
**rude** [2] - 15:12, 20:15
**rule** [1] - 5:14
**Russian** [5] - 4:20, 5:5, 5:21, 6:17, 14:24
**Russian-language** [2] - 4:20, 14:24
**RYAN** [1] - 2:19
**Ryan** [1] - 4:21


## S


**SA** [34] - 8:11, 8:21, 8:22, 9:9, 10:21, 11:10, 11:11, 11:17, 11:23, 11:25, 12:3, 12:5, 12:7, 12:13, 12:14, 12:16, 12:19, 13:9, 13:18, 14:25, 20:1, 24:11, 24:12, 25:2, 25:10, 25:13, 25:16, 25:22, 26:1, 26:9, 26:12, 26:18, 31:3
**sally** [1] - 10:20
**sanction** [2] - 17:19, 29:2
**sat** [3] - 12:8, 12:12, 25:1
**scared** [1] - 15:16
**scene** [1] - 10:11
**scheduled** [4] - 5:23, 8:1, 8:3, 20:7
**scrutiny** [1] - 32:25
**sealing** [1] - 32:5
**seated** [2] - 4:18, 7:19
**second** [6] - 10:19, 16:14, 17:7, 18:3, 20:25, 29:9
**SECTION** [1] - 36:12
**Section** [1] - 5:20
**section** [1] - 33:14
**security** [1] - 18:24
**see** [3] - 9:22, 21:22, 32:13
**seeing** [1] - 27:5
**seek** [1] - 25:15
**seeking** [2] - 5:21, 24:20
**selected** [1] - 33:16
**selecting** [1] - 33:17
**self** [4] - 7:8, 16:2, 19:7, 31:9
**self-defense** [4] - 7:8, 16:2, 19:7, 31:9
**sense** [2] - 16:22, 34:3
**serious** [2] - 28:25, 32:21
**serve** [1] - 33:16
**Service** [1] - 7:17
**Services** [1] - 6:3
**session** [1] - 26:5
**SESSION** [1] - 4:3
**set** [1] - 7:11
**several** [2] - 10:13, 29:23
**SHANNON** [1] - 2:15
**Shannon** [1] - 4:17
**SHELLEY** [1] - 2:19
**Shelly** [1] - 4:21
**SHERILYN** [1] - 1:5
**shifts** [1] - 31:24
**shocked** [1] - 15:16
**shocking** [1] - 16:21
**showing** [2] - 17:19, 29:2
**shows** [3] - 20:11, 20:16, 20:23
**sic** [1] - 13:12
**side** [3] - 13:21, 21:24, 33:20
**silent** [1] - 12:22
**similarly** [1] - 20:24
**simply** [2] - 25:18, 31:17
**sitting** [1] - 26:2
**six** [6] - 13:22, 20:6, 20:12, 21:18, 22:2, 22:7
**Sixth** [1] - 30:3
**sleep** [1] - 30:15
**slightly** [1] - 13:21
**Smith** [35] - 7:18, 7:21, 7:23, 8:12, 8:22, 9:9, 10:21, 11:2, 11:10, 11:11, 11:17, 11:23, 11:25, 12:3, 12:5, 12:7, 12:13, 12:14, 13:9, 13:12, 13:18, 14:25, 20:1, 24:11, 24:12, 24:15, 24:25, 25:2, 25:10, 25:13, 25:16, 25:22, 26:1, 26:9
**Smith's** [5] - 8:11, 8:21, 26:12, 26:18, 31:3
**sorry** [2] - 5:2, 14:23
**sources** [1] - 29:23
**speaking** [3] - 6:17, 21:4, 22:16
**Special** [3] - 7:18, 24:15, 24:25
**specific** [1] - 18:9
**specifically** [1] - 29:17
**spent** [1] - 5:11
**SPRING** [2] - 2:6, 2:10
**stance** [1] - 20:21
**stand** [3] - 21:19, 22:21, 31:25
**standing** [2] - 14:7, 15:5
**start** [1] - 5:7
**statements** [5] - 10:4, 11:13, 11:18, 20:13, 24:2
**STATES** [11] - 1:1, 1:7, 1:22, 2:4, 2:9, 36:5, 36:11, 36:13, 36:17, 36:20
**States** [9] - 4:5, 5:20, 5:22, 6:2, 16:17, 16:22, 17:5, 28:21, 30:6
**status** [1] - 24:14
**statutory** [1] - 17:11
**STENOGRAPHICALLY** [1] - 36:14
**stood** [1] - 22:8
**Street** [2] - 7:13, 7:21
**STREET** [5] - 1:23, 2:6, 2:10, 2:16, 2:20
**strike** [2] - 12:18, 23:25
**strikes** [1] - 18:25
**subject** [2] - 8:6, 15:24
**submission** [1] - 23:2
**submitted** [1] - 10:7
**substance** [1] - 24:19
**substantial** [7] - 16:5, 16:24, 18:5, 18:14, 24:8, 27:17, 29:11
**substantially** [4] - 29:16, 31:5, 34:4, 34:9
**successful** [1] - 28:9
**suffers** [2] - 18:4, 29:10
**sufficient** [2] - 31:15, 32:14
**SUITE** [1] - 1:23
**supervisor** [5] - 8:2, 9:9, 10:2, 19:10, 19:22
**supervisors** [1] - 20:1
**supervisory** [9] - 16:16, 17:10, 18:4, 28:17, 28:18, 28:23, 29:10, 31:11, 34:7
**support** [1] - 25:24
**supported** [1] - 8:8
**supporting** [1] - 10:25
**supposed** [1] - 19:8
**Supreme** [1] - 29:21
**surrounding** [1] - 31:20
**surveillance** [2] - 8:13, 10:7
**sustained** [4] - 6:25, 11:21, 11:25, 32:20
**system** [1] - 7:24


## T


**table** [7] - 4:11, 4:19, 4:21, 7:19, 12:8, 12:12, 25:1
**TAKOR** [1] - 4:14
**tall** [1] - 13:22
**tampering** [1] - 12:24
**terms** [1] - 19:1
**testified** [12] - 11:11, 11:23, 12:1, 13:9, 13:17, 14:24, 15:10, 15:14, 15:20, 19:18, 30:11, 32:9
**testifies** [1] - 32:6
**testify** [21] - 11:2, 16:1, 16:8, 17:1, 18:16, 24:10, 27:18, 28:7, 29:17, 29:20, 29:22, 30:2, 30:9, 30:20, 31:6, 31:20, 32:8, 32:10, 34:5, 34:10, 34:13
**testifying** [1] - 30:16
**testimony** [13] - 11:16, 12:20, 13:4, 19:23, 20:14, 23:22, 24:1, 24:19, 25:13, 25:15, 27:20, 30:8, 30:17
**THAKOR** [1] - 2:10
**Thakor** [1] - 4:10
**THAT** [2] - 36:12, 36:15
**THE** [27] - 2:4, 2:4, 2:9, 2:14, 2:14, 2:18, 4:4, 4:15, 4:22, 4:24, 5:1, 5:3, 5:6, 34:20, 34:25, 36:10, 36:11, 36:13, 36:14, 36:15, 36:16, 36:17, 36:19, 36:20
**themselves** [1] - 28:20
**theory** [2] - 7:8, 31:9
**thereafter** [1] - 8:6
**third** [3] - 18:6, 29:12, 31:10
**THIS** [1] - 36:18
**Thomas** [1] - 7:18
**threat** [2] - 28:25, 29:17
**threaten** [1] - 21:16
**threatened** [1] - 27:25
**threatening** [8] - 10:5, 15:13, 19:20, 20:5, 20:15, 24:2, 24:7
**threats** [1] - 10:5
**three** [6] - 11:1, 11:3, 13:10, 17:19, 23:11, 23:15
**timeframe** [1] - 20:16

**Title** [1] - 5:20
**TITLE** [1] - 36:13
**TO** [3] - 1:16, 3:4, 36:12
**today** [2] - 5:7, 7:11
**together** [1] - 18:22
**tone** [5] - 9:19, 15:12, 19:19, 20:15, 24:2
**took** [5] - 5:24, 9:2, 9:6, 15:1, 27:7
**top** [1] - 10:17
**totality** [4] - 18:10, 18:11, 24:5, 32:12
**toward** [1] - 22:20
**towards** [5] - 14:10, 20:4, 20:11, 20:17, 21:1
**TRANSCRIPT** [4] - 1:15, 36:14, 36:16, 36:18
**transferred** [1] - 14:25
**transpired** [1] - 8:6
**transported** [1] - 7:21
**transporting** [2] - 26:1, 26:4
**trial** [18] - 5:7, 7:11, 7:16, 12:6, 13:10, 16:1, 16:8, 20:7, 21:20, 22:2, 23:5, 23:7, 26:15, 29:23, 30:16, 31:6, 33:11, 34:5
**triggered** [1] - 31:19
**true** [2] - 27:9, 32:8
**TRUE** [1] - 36:13
**trying** [1] - 6:18
**TUESDAY** [2] - 1:18, 4:1
**turned** [4] - 9:20, 9:24, 21:1, 21:2
**TWELFTH** [2] - 2:6, 2:11
**two** [8] - 10:7, 12:2, 12:4, 16:11, 22:25, 23:15, 23:18, 25:5

**U**

**U.S** [1] - 29:21
**ultimately** [1] - 33:21
**under** [10] - 12:18, 14:22, 16:10, 16:16, 16:19, 17:7, 18:3, 18:7, 19:13, 29:9
**understood** [2] - 12:25, 15:13
**unfolded** [1] - 27:5
**unfortunate** [1] - 34:22
**unhampered** [4] - 16:25, 18:15, 24:9, 27:18
**United** [8] - 4:5, 5:20, 5:22, 6:2, 16:17, 16:22, 17:5, 28:21
**UNITED** [11] - 1:1, 1:7, 1:22, 2:4, 2:9, 36:5, 36:11, 36:13, 36:17, 36:20
**universal** [2] - 16:22, 34:3
**unquote** [2] - 10:6, 15:18
**unrebutted** [2] - 16:8, 30:18
**unrelated** [1] - 27:10
**up** [3] - 20:18, 21:6, 30:14
**urges** [1] - 26:21

**V**

**validly** [1] - 17:14
**various** [2] - 7:7, 24:20
**Vavages** [1] - 17:5
**versus** [2] - 28:21, 29:21
**via** [1] - 7:24
**video** [17] - 8:13, 10:8, 10:10, 13:14, 14:5, 14:12, 20:2, 20:11, 20:16, 20:20, 20:23, 21:5, 21:8, 22:22, 23:11, 23:23, 25:11
**videocamera** [1] - 10:19
**videos** [1] - 10:8
**violate** [1] - 16:22
**violated** [1] - 34:3
**violation** [13] - 5:19, 16:14, 16:15, 16:20, 17:1, 17:11, 18:16, 18:19, 27:14, 28:2, 28:10, 28:15, 34:5
**violations** [1] - 32:14
**violence** [2] - 26:15, 26:16
**Vladimir** [2] - 4:24, 5:4
**voice** [1] - 10:3
**vs** [2] - 1:10, 36:6

**W**

**waiting** [2] - 9:16, 33:15
**waive** [1] - 13:1
**walk** [1] - 22:15
**walked** [1] - 9:25
**walking** [3] - 13:20, 20:23, 20:25
**wall** [1] - 10:13
**warrant** [1] - 6:6
**warranted** [4] - 17:19, 18:3, 29:2, 29:9
**warrants** [1] - 34:7
**watch** [1] - 14:14
**wearing** [2] - 9:16, 15:9
**weighs** [1] - 13:22
**weight** [1] - 6:12
**well-established** [1] - 16:23
**WEST** [1] - 1:23
**WESTERN** [1] - 1:3
**whole** [1] - 18:14
**wife** [2] - 5:25, 6:18
**willful** [1] - 28:20
**willing** [1] - 33:10
**window** [4] - 10:9, 10:13, 10:14, 13:20
**WITH** [2] - 36:16, 36:19
**witness** [9] - 12:6, 12:18, 12:24, 14:22, 16:25, 19:5, 24:14, 26:5, 28:7
**witness's** [1] - 16:25
**witnesses** [11] - 11:2, 11:4, 11:6, 11:7, 22:14, 26:3, 27:12, 27:24, 29:18, 30:4, 30:8
**word** [2] - 15:13, 25:19
**words** [1] - 22:13
**worried** [1] - 30:15
**worth** [1] - 21:15
**written** [2] - 8:16, 9:7

**Y**

**years** [1] - 32:23
**yesterday** [7] - 5:11, 5:13, 10:23, 12:15, 19:16, 23:17, 32:9

**Z**

**Zaitses** [1] - 14:23
**ZAITSEV** [3] - 1:12, 2:14, 36:7
**Zaitsev** [131] - 4:6, 4:18, 5:18, 5:21, 5:25, 6:4, 6:9, 6:10, 6:12, 6:14, 6:17, 6:21, 6:22, 6:24, 7:2, 7:6, 7:8, 7:12, 7:20, 7:25, 8:4, 8:10, 8:24, 9:1, 9:3, 9:5, 9:12, 9:15, 9:18, 9:19, 9:20, 9:22, 9:23, 10:9, 10:16, 10:21, 11:3, 11:5, 11:15, 11:18, 11:20, 12:1, 12:11, 13:7, 13:13, 13:15, 13:19, 13:21, 13:25, 14:1, 14:3, 14:4, 14:6, 14:9, 14:10, 14:13, 14:14, 14:15, 14:16, 14:22, 14:23, 15:2, 15:10, 15:14, 15:17, 15:19, 15:20, 15:22, 15:23, 15:25, 16:4, 18:24, 19:1, 19:19, 20:4, 20:10, 20:11, 20:14, 20:22, 20:24, 21:1, 21:4, 21:7, 21:8, 21:14, 21:17, 21:21, 21:23, 22:3, 22:4, 22:6, 22:8, 22:9, 22:12, 22:16, 22:17, 22:20, 22:23, 22:24, 22:25, 23:2, 23:5, 23:6, 23:13, 24:2, 24:14, 24:17, 25:3, 25:8, 25:10, 25:11, 25:14, 25:16, 25:19, 26:2, 26:4, 27:19, 29:16, 30:10, 30:19, 30:23, 32:1, 32:6, 32:9, 33:6, 33:7, 33:21
**Zaitsev's** [28] - 6:16, 7:24, 8:9, 11:12, 11:14, 11:19, 11:24, 13:18, 13:24, 16:6, 18:21, 19:9, 20:14, 20:17, 20:19, 21:21, 22:7, 24:1, 24:9, 27:17, 27:21, 29:20, 31:19, 32:7, 34:4, 34:6, 34:10, 34:13

# EXHIBIT B



USAO_000006

