# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

MAKSIM ZAITSEV,

                           Petitioner,

          v.

WARDEN, Adelanto ICE Processing Center, in his/her official capacity; ERNESTO JR SANTACRUZ, Acting Field Office Director for Immigration and Customs Enforcement and Removal Operation, U.S. Immigration and Custom Enforcement (Los Angeles Field Office); TODD M. LYONS, Acting Director of U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of U.S. Department of Homeland Security; and TODD BLANCHE, Acting Attorney General, Department of Justice,

                     Respondents.[1]

Case No. 2:26-cv-00454-SPG-AS

**ORDER GRANTING RENEWED MOTION FOR A TEMPORARY RESTRAINING ORDER [ECF NO. 18]**

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Respondents Kristi Noem and Pamela Bondi are automatically substituted for Markwayne Mullin and Todd Blanche as Secretary for the Department of Homeland Security and Acting Attorney General, respectively.

-1-

Petitioner Maksim Zaitsev ("Petitioner") is a Russian national detained at the United States Immigration and Customs Enforcement ("ICE") Processing Center in Adelanto, California.  *See* (ECF No. 1 ("Petition")).  Petitioner previously filed an *Ex Parte* Motion for a Temporary Restraining Order challenging his detention as "punitive, unlawful, and not reasonably related to any legitimate immigration purpose." (ECF No. 1 ("Petition") at 14); *see also* (ECF No. 1-3 ("Motion"); ECF No. 9 ("Reply")).  In connection with the Motion, Petitioner did not present a developed argument for why the circumstances of his detention violated his right to procedural due process, instead generally challenging an immigration judge's ("IJ") findings in a bond hearing, the conditions of his confinement, and the length of his detention.  *See, e.g.*, (Reply at 1–4).  Therefore, the Court found that the Motion, as presented, did not show Petitioner was likely to succeed on the merits of his claim under the Fifth Amendment's Due Process Clause and denied the Motion without prejudice to Petitioner re-filing a renewed motion.  *See* (ECF No. 14 ("TRO Order")).

On March 25, 2026, Petitioner filed a Renewed Motion for a Temporary Restraining Order.  *See* (ECF No. 18 ("Renewed Motion")).  Among other arguments, Petitioner claims that Respondents Warden, Adelanto ICE Processing Center; Ernesto Santacruz, Jr., Acting Field Office Director, Enforcement and Removal Operations, ICE Los Angeles Field Office; Todd M. Lyons, Acting Director, ICE; Markwayne Mullin, Secretary, Department of Homeland Security ("DHS"); and Todd Blanche, Acting Attorney General, United States Department of Justice ("Respondents") violated his right to procedural due process by failing to provide him with notice and a pre-deprivation hearing before revoking his release on conditional parole.  *See* (*id.* at 4).  The Court has considered the Renewed Motion and determined that it is suitable for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); *see also* C.D. Cal. L.R. 7-15.  Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS the Renewed Motion.

## I.  BACKGROUND[2]

### A.  Factual Background

Petitioner entered the United States through Mexico on December 16, 2022, seeking political asylum.  *See* (ECF No. 32 ("Renewed Reply") at 2).  According to the Petition, upon entering the United States, he "affirmatively presented himself" to immigration authorities.  *See* (Petition at 3).  At the border, United States Customs and Border Patrol determined that Petitioner did not pose a danger to the community or a flight risk and released Petitioner from immigration custody on a one-year term of conditional parole.  *See* (Renewed Reply at 2).  On April 3, 2023, ICE issued Petitioner a Notice to Appear.  *See* (ECF No. 8-1).  However, ICE subsequently entered an Order of Release on Recognizance ("OREC"), permitting Petitioner to remain free from custody on a grant of conditional parole.  *See* (Renewed Reply at 2).  Petitioner claims that he timely appeared for all ICE reporting appointments and otherwise complied with the terms of his parole.  *See* (*id.* at 3).

Petitioner subsequently received a notice from ICE, directing him to report with his wife to an ICE field office in Downtown Los Angeles on February 25, 2025.  *See* (Petition at 11).  After arriving at the field office, Petitioner was presented with an administrative arrest warrant and two Deportation Officers, Officers Robles and Hisle, initiated Petitioner's arrest by placing him in handcuffs.  *See* (*id.*); *see also* (ECF No. 1-3, Ex. A ("Hearing Transcript"), at 13).  As the officers led Petitioner away in handcuffs, Petitioner began yelling to his wife in Russian.  *See* (Hearing Transcript at 12–13.).  According to the Petition, Officers Robles and Hisle "attempted to force Petitioner's sweatshirt hood into his mouth causing him to struggle for air."  *See* (Petition at 11).  Petitioner bit down on Officer Robles's pinky finger, fracturing his finger.  *See* (*id.*); *see also* (Hearing Transcript at 13).  Officers Robles and Hisle punched Petitioner multiple times, resulting in Petitioner sustaining lacerations to his head and face.  *See* (Hearing Transcript at 13–14).

---

[2] In the TRO Order, the Court summarized the factual and procedural background of this case in greater detail.  For purposes of this order, the Court only recounts those facts necessary to decide the Renewed Motion.

The Government subsequently brought criminal charges against Petitioner for assaulting a federal employee. *See* Complaint, *United States v. Zaitsev ("Zaitsev")*, 2:25-cr-00154-SPG-1, ECF No. 1 (C.D. Cal. Feb. 25, 2025). Following Petitioner's initial placement in pre-trial detention, the Court ordered Petitioner's release on bond, finding that he did not pose a flight risk or a danger to the community. *See* Minutes, *Zaitsev*, ECF No. 15 (C.D. Cal. Mar. 11, 2025); Amended Minutes, *Zaitsev*, ECF No. 32 (C.D. Cal. Apr. 2, 2025). Petitioner was released on April 4, 2025, but immediately re-detained by ICE. *See* Bond and Conditions of Release, *Zaitsev*, ECF No. 37 (C.D. Cal. Apr. 4, 2025); (ECF No. 8-2, Ex. 2). Approximately three weeks later, on April 30, 2025, Petitioner received a bond hearing before an IJ. *See* (ECF No. 8-4, Ex. 4). At the hearing, the IJ determined that Petitioner is an "arriving alien" and, therefore, that he lacked jurisdiction to consider Petitioner's eligibility for release on bond. *See* (*id.*).

In the criminal action, Petitioner entered a plea of not guilty and indicated that he may testify at trial that he had acted in self-defense in biting Officer Robles's finger. *See* (Hearing Transcript at 14). Roughly a week before Petitioner's case was scheduled to begin trial, as Petitioner checked into an ICE holding facility in Downtown Los Angeles after a pre-trial hearing, Officer Hisle confronted Petitioner. *See* (*id.* at 14–15). While processing Petitioner back into custody, Officer Hisle approached Petitioner, asked if Petitioner remembered him, then took off his face covering and repeated the question. *See* (*id.* at 15–16). During this interaction, Officer Hisle came within six inches of Petitioner's face and pointed his finger near Petitioner's face. *See* (*id.* at 20–21). Officer Hisle then lingered nearby as Petitioner was processed into custody and, in Petitioner's line of sight, pumped his clenched fist in the air and looked toward Petitioner. *See* (*id.*).

Following the confrontation, Petitioner moved to dismiss the Government's indictment, claiming that Officer Hisle violated his right to due process by discouraging him from testifying in his own defense at trial. *See* Motion to Dismiss Indictment, *Zaitsev*, ECF No. 91 (C.D. Cal. May 17, 2025). After an evidentiary hearing, the Court dismissed the indictment. *See* (Hearing Transcript at 41). Based on the evidence presented, the Court

-4-

found that Officer Hisle's conduct amounted to substantial Government interference with Petitioner's free and unhampered decision whether to testify in his own defense. *See* (*id.* at 31). The Court reached this conclusion based on Officers Hisle and Robles beating Petitioner during his administrative arrest, Petitioner's testimony about Office Hisle's threatening tone during the confrontation in ICE custody, and video footage showing Officer Hisle's intimidating stance and demeanor during the confrontation. *See* (*id.* at 25–27). The Court also relied on the Government's failure to rebut Petitioner's narrative of events by electing not to cross-examine Petitioner, ask any questions of Officer Hisle, or call any officers who were present for the confrontation as witnesses. *See* (*id.* at 37); *see also* (*id.* at 23, 28–30).

Following the Court's dismissal of the criminal indictment, ICE continued to hold Petitioner in immigration detention. *See* (Petition at 2). On July 15, 2025, Petitioner received a bond hearing but, as with Petitioner's first bond hearing before an IJ, the presiding IJ for the second hearing concluded that he lacked jurisdiction to consider Petitioner's eligibility for release on bond. *See* (ECF No. 8-5, Ex. 5). Approximately four months later, on November 14, 2025, Petitioner received a bond hearing at which the IJ required the Government to show by clear and convincing evidence that Petitioner was ineligible for release on bond. *See* (ECF No. 8-6, Ex. 6). Based on the evidence presented, the IJ determined that Petitioner's release "would pose such a significant flight risk that no amount of bond and/or alternatives to detention would be appropriate." (*Id.*).

**B.    Procedural Background**

Petitioner filed this action on January 15, 2026, and, on the same day, filed his *Ex Parte* Motion for a Temporary Restraining Order. The Petition and Motion both primarily challenged the length of Petitioner's detention and the IJ's determination that Petitioner posed a flight risk. *See, e.g.*, (Petition at 3 (arguing that Petitioner's detention violates due process because ICE "may not detain an individual as a form of punishment or as a pretext for criminal incarceration after the government has lost its criminal case"); *id.* at 5 (arguing

that the evidence presented at Petitioner's third bond hearing "undermine[s], rather than support[s], any finding of flight risk")); *see also* (Motion at 2–4; Reply at 2–4).

Although the Petition challenged Petitioner's detention as a violation of procedural due process, Petitioner's briefing in connection with the initial Motion did not present argument for why the procedure followed in connection with his detention failed to comport with due process. *See generally* (Motion; Reply). In opposition, Respondents detailed the statutory basis for Petitioner's continued detention, without addressing whether the procedure specific to this case provided Petitioner with due process of law. *See* (ECF No. 8 ("Opposition")). On February 4, 2026, the Court held a hearing on the Motion. *See* (ECF No. 12). At the hearing, the parties primarily presented argument on Petitioner's claim that the IJ's determination that Petitioner posed a flight risk was not supported by the factual record, and his claim that his detention was not supported by a legitimate government interest. Neither party addressed Petitioner's procedural due process claim.

On February 9, 2026, the Court denied Petitioner's Motion. *See* (TRO Order). The Court determined that, on the argument and evidence presented, Petitioner had not shown a likelihood of success on either his statutory or constitutional claims. *See* (*id.* at 14–25). The Court explained that Petitioner challenged his continued detention "based upon the IJ's determination in his third bond hearing that Petitioner poses a flight risk" and did not address "the IJ's determination in the initial two bond hearings that the IJ lacked jurisdiction to consider Petitioner's request for release on bond." (*Id.* at 16). The Court proceeded to find that Petitioner's challenge to the IJ's determination that he posed a flight risk presented a factual challenge outside the scope of what the Court may properly review for abuse of discretion. *See* (*id.* at 19–20); *see also Martinez v. Clark*, 124 F.4th 775 (9th Cir. 2024). The Court then held that, as presented, Petitioner failed to show a likelihood of success on the merits of his due process claim based on the Ninth Circuit's determination that the statutory and regulatory framework governing detention under 8 U.S.C. § 1226(a) complies with due process of law. *See* (TRO Order at 21–23); *see also Rodriguez Diaz v.*

*Garland*, 53 F.4th 1189, 1207–10 (9th Cir. 2022).  Finally, the Court found that Petitioner was not likely to succeed on the merits of his substantive due process claim, as he had not presented evidence to show that the purpose of his continued detention was punitive, rather than regulatory.  *See* (TRO Order at 23–24); *see also United States v. Torres*, 995 F.3d 695 (9th Cir. 2021).  However, the Court denied the Motion without prejudice to Petitioner re-filing a request for interim injunctive relief at a later date.  *See* (TRO Order at 2).

In the Renewed Motion, Petitioner presents a more developed argument in support of his claim under the Fifth Amendment's procedural due process clause.  Petitioner argues that he was released in the United States on conditional parole and, by re-detaining him without providing him with notice for the basis for the revocation of his parole or the opportunity to be heard before revoking his parole, Respondents violated his right to procedural due process.  *See* (Renewed Motion at 5–6).  Petitioner also argues that the IJs improperly determined that he was subject to mandatory detention in his initial two bond hearings, thereby depriving him of his constitutional rights by detaining him without access to a legally sufficient bond hearing for a period of approximately 180 days.  *See* (*id.* at 8–9).  Separately, Petitioner argues that his prolonged detention is not reasonable because there is no significant likelihood of his removal in the foreseeable future.  *See* (*id.* at 11–12).

On April 1, 2026, Respondents filed a brief in opposition to the Renewed Motion.  *See* (ECF No. 25 ("Renewed Opposition")).  In their Renewed Opposition, Respondents rely on the arguments from their initial Opposition, without responding to Petitioner's new arguments in support of his procedural due process claim.  *See* (*id.* at 2).  Petitioner filed his Renewed Reply on April 3, 2026.  *See* (Renewed Reply).

## II.    LEGAL STANDARD

A temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  The standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction.  *See Washington v.*

*Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." (internal quotation marks and citation omitted)). A plaintiff may secure a temporary restraining order upon establishing that: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *See Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citing *Winter*, 555 U.S. at 20).

"[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (citing *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Id.* (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

The court is permitted to consider the parties' pleadings, declarations, affidavits, and exhibits submitted when deciding an application for a temporary restraining order. *See Earth Island Inst. v. Nash*, No. 1:19-cv-01420-DAD-SAB, 2020 WL 1936701, at *6 (E.D. Cal. Apr. 21, 2020) ("[I]n considering a motion for preliminary injunction, a court may consider and rely upon declarations, affidavits, and exhibits submitted by the parties." (citations omitted)); *Harper v. Poway Unified Sch. Dist.*, 345 F. Supp. 2d 1096, 1119–20 (S.D. Cal. 2004) (considering declarations submitted by defendants to deny plaintiff's request for a preliminary injunction). "The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citations omitted).

The urgency of the relief sought necessitates a prompt determination and can make it difficult to obtain admissible evidence. *See id.*

## III.    DISCUSSION

As discussed below, Petitioner has made a sufficient showing on the *Winter* factors to merit preliminary injunctive relief. Based on Petitioner's new arguments in support of his procedural due process claim, the Court finds that Petitioner is likely to succeed on the merits of his habeas petition. Petitioner has also shown that he faces irreparable harm from his continued detention. Finally, Respondents have not shown that the public interest and balance of equities outweigh Petitioner's interest in his release from custody.

### A.    Likelihood of Success on the Merits

Courts examine procedural due process claims in two steps. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). At the first step, courts ask "whether there exists a liberty or property interest which has been interfered with by the State." *Id.* If so, at the second step, courts must consider "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id.*

#### 1.    Deprivation of a Protected Interest

In a variety of contexts, the Supreme Court has repeatedly found that individuals possess a protected liberty interest against re-incarceration following even a conditional release from imprisonment. *See, e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (finding protected liberty interest in revocation of parole); *Young v. Harper*, 520 U.S. 143, 147–49 (1997) (preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (probation). As other courts within the Ninth Circuit have recognized, noncitizens living in the United States under an order that permits their conditional release from custody have a protected liberty interest. *See, e.g.*, *Banol v. Warden*, No. 5:26-CV-00529-CAS-ACCV, 2026 WL 776793, at *5 (C.D. Cal. Mar. 19, 2026); *Lucas v. LaRose*, No. 3:25-CV-02973-GPC-JLB, 2025 WL 3485163, at *5 (S.D. Cal. Dec. 4, 2025); *J.A.E.M. v. Wofford*, No. 1:25-CV-01380-KESHBK (HC), 2025 WL 3013377, at *4 (E.D. Cal. Oct. 27, 2025).

2.    Process Due

The Ninth Circuit has assumed without deciding that the balancing test articulated in *Matthews v. Eldridge*, 424 U.S. 319 (1976), applies to procedural due process claims in the immigration context. *See Rodriguez Diaz*, 53 F.4th at 1206–07. District courts within the Ninth Circuit have similarly applied the *Matthews* test to procedural due process claims challenging immigration detention. *See Hogarth v. Santacruz*, No. 5:25-CV-09472-SPG-MAR, 2025 WL 3211461, at *6 (C.D. Cal. Oct. 23, 2025) (collecting cases). In *Matthews*, the Supreme Court described three factors courts should consider in assessing a due process claim: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

In *Rodriguez Diaz*, the Ninth Circuit rejected a facial and as-applied challenge to the procedure for a non-citizen's detention pending a decision on removal, pursuant to 8 U.S.C. § 1226(a). *See* 53 F.4th at 1213. There, Rodriguez Diaz was taken into ICE custody following his release from criminal incarceration, received a bond hearing approximately two months later, and, at his bond hearing, was denied release on bond based on the determination that he posed a danger to the community. *See id.* at 1194. Approximately a year later, Rodriguez Diaz requested a second bond hearing. *See id.* at 1195. However, the IJ denied his request based on his failure to show changed circumstances. *See id.* On appeal, the Ninth Circuit determined that "§ 1226(a)'s procedures satisfy due process, both facially and as applied to Rodriguez Diaz." *Id.* at 1213. However, the Ninth Circuit made clear that its decision did not "foreclose all as-applied challenges to § 1226(a)'s procedures," *id.*, and that its decision addressed a case in which "the review process" for release on bond pending a decision on removal "follow[ed] its ordinary course," *id.* at 1210.

In connection with the Renewed Motion, Petitioner has presented sufficient evidence and argument to show that this is not a case where the review process for determination of

release on bond followed its "ordinary course" under the statutory and regulatory scheme normally applicable to detention under § 1226(a).  Specifically, Petitioner claims, and Respondents do not contest, that Respondents revoked Petitioner's release on an OREC without providing him notice of the basis for its revocation.  *See, e.g.*, (Renewed Motion at 5–6; Renewed Reply at 3).  Petitioner also did not receive a hearing where an IJ considered his eligibility for release on bond until more than seven months after he was detained.  *See* (ECF No. 8-2, Ex. 2; ECF No. 8-6, Ex. 6).  Therefore, the Ninth Circuit's decision in *Rodriguez Diaz* is distinguishable, and the Court must consider, on the facts of this case, whether the process Petitioner received complies with due process.[3]

First, Petitioner has a strong interest in his continued freedom on conditional parole. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  The protection afforded by the Due Process Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.  During his release on an OREC, Petitioner received authorization to work in the United States and was able to form a life here with his spouse.  *See, e.g.*, (Renewed Motion at 3).  As such, before his detention, Petitioner enjoyed "many of the core values of unqualified liberty." *Morrissey v. Brewer*, 408 U.S. at 482 (release on parole allows parolees to be gainfully employed, spend time with friends and family, and form "the other enduring attachments of normal life").  Therefore, notwithstanding the conditional nature of his liberty, this factor weighs in Petitioner's factor.  *See id.* (revocation of parole inflicts a "grievous loss").

Second, the Court considers the risk of erroneous deprivation in Petitioner's liberty interest through the procedures used and the probable value of additional procedural safeguards.  In releasing Petitioner on an OREC, "immigration officials necessarily

---

[3] To the extent the Court's analysis below is inconsistent with its analysis in the TRO Order, the Court reconsiders its prior ruling based on the factual record and arguments presented in the Renewed Motion.

determined that Petitioner did not present a risk of flight or danger to the community." *Bekler v. Noem*, No. 1:25-CV-01974-CDB (HC), 2026 WL 234949, at *8 (E.D. Cal. Jan. 29, 2026); *see also* 8 C.F.R. § 1236.1(c)(8). Petitioner claims that, during his release on the OREC, he consistently complied with the conditions of his parole. *See* (Renewed Motion at 7). On the record presented, it appears that Petitioner was not provided notice, at the time of his arrest, of changed circumstances justifying revocation of his OREC or the opportunity to be heard. *See* (Renewed Motion at 5–6; Renewed Reply at 3).

The Supreme Court has only permitted "exceptions to the general rule requiring predeprivation notice and hearing" in "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993). Notably, in revoking criminal parole, the state must provide a parolee with notice of their alleged parole violation, a preliminary hearing before someone not directly involved in the case, and the opportunity to contest the basis for revocation. *See Morrissey*, 408 U.S. at 485–87 (requiring both a preliminary hearing and a revocation hearing). Here, Respondents have not presented argument to justify departing from the "general rule requiring predeprivation notice and hearing." *James Daniel Good Real Prop.*, 510 U.S. at 53.

However, pursuant to *Rodriguez Diaz*, the Court also considers the additional process that Petitioner received during his time in custody. *See Rodriguez Diaz*, 53 F.4th at 1207. Following his arrest, Petitioner was held without a bond hearing on the merits of his eligibility for release for seven months. *See* (ECF No. 8-2, Ex. 2; ECF No. 8-6, Ex. 6). In the two initial hearings where an IJ determined that Petitioner was ineligible for release on bond as an "arriving alien," Petitioner was seemingly denied the opportunity to contest his continued detention based on an error of law. In these hearings, the IJs determined that Petitioner was ineligible for custody redetermination under 8 U.S.C. §1225. *See* (ECF No. 8-4, Ex. 4; ECF No. 8-5, Ex. 5). However, before he was detained, Petitioner had been released on his own recognizance and living in the United States for a period of more than two years. *See* (Renewed Reply at 2). Therefore, Petitioner was likely eligible for release

on bond pursuant to 8 U.S.C. § 1226. *See Montero-Alvarez v. Alberran*, No. 1:25-CV-1695 AC, 2025 WL 3754116, at *3 (E.D. Cal. Dec. 29, 2025) ("The Ninth Circuit, the Board of Immigration Appeals (BIA), and other district courts have found that 'release on recognizance' is the same as 'conditional parole' under § 1226(a)"); *see also Perez v. Lyons*, No. 1:26-CV-00064-DMC (HC), 2026 WL 158818, at *6 (E.D. Cal. Jan. 21, 2026) (finding that noncitizen apprehended at the border, released into the United States, and re-detained after a period of more than two years was eligible for bond under § 1226).

Finally, the Court considers the Government's interest "in detaining aliens who are subject to removal." *Rodriguez Diaz*, 53 F.4th at 1206. In assessing § 1226(a), the Ninth Circuit has previously concluded that there is a "heightened governmental interest" in "determining whether removable aliens must be released on bond during the pendency of removal proceedings." *Id.* at 1207–08. However, the Court does not find that the Government's interest justifies re-detaining Petitioner without a hearing, especially considering the Government's implicit determination upon releasing Petitioner on the OREC that he did not pose a danger to the community or a flight risk, *see* 8 C.F.R. § 1236.1(c)(8), and based on Petitioner's history of compliance with his reporting requirements. *See Hasratyan v. Bondi*, No. 5:26-CV-00210-MCS-ADS, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026) ("[T]here is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing."); *see also Fernandez Lopez v. Wofford*, No. 1:25-CV-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("In immigration court, custody hearings are routine and impose a minimal cost."). Therefore, the Court finds that Petitioner was entitled to notice for the basis of the revocation of his OREC and a pre-detention hearing.

### 3. Remedy

"The question whether a certain procedure violates an alien's right to due process is separate from the question regarding the proper remedy once a due process violation has already been found." *Walters v. Reno*, 145 F.3d 1032, 1044 n.6 (9th Cir. 1998). "Habeas

-13-

is at its core a remedy for unlawful executive detention," and "[t]he typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). In their Renewed Opposition, Respondents have not requested a remedy short of release. *See generally* (Renewed Opp.); *see also* (Opp.).

More than seven months after he was re-detained by ICE, following the Court's determination that Petitioner did not pose a danger to the community or a flight risk justifying criminal detention, an IJ denied Petitioner's release on bond based on a determination that he posed a flight risk. *See* (ECF No. 8-5, Ex. 5). However, as previously discussed, Petitioner is likely to succeed in showing that Respondents' failure to provide him with predeprivation notice and a hearing violated his right to due process. "[A] post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing." *Nurlan Gudavasov v. David Marin*, No. 5:26-CV-00541-AH-(MBK), 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026); *see also Riveros-Sanchez v. City of Easton*, 861 F. App'x 819, 822 (3d Cir. 2021) ("[I]f a predeprivation hearing was required, then no amount of postdeprivation process could cure the . . . initial failure to provide a hearing." (internal quotation marks omitted)).

Therefore, pending final adjudication on the merits, Petitioner's release from custody is warranted to return the parties to the status quo. *See, e.g.*, *Hasratyan*, 2026 WL 288909, at *5 (ordering release from custody on due process violation, notwithstanding determination that noncitizen posed a flight risk); *see also S.K. v. Hermosillo*, No. 2:26-CV-00789-TLF, 2026 WL 936458, at *4 (W.D. Wash. Apr. 7, 2026); *E.G.M. v. Scott*, No. C26-0744-KKE, 2026 WL 914803, at *6 (W.D. Wash. Apr. 3, 2026); *Singh v. Noem*, No. C26-0302JLR, 2026 WL 879247, at *6 (W.D. Wash. Mar. 31, 2026); *Singh v. Noem*, No. 2:26-CV-00427-KWR-KK, 2026 WL 766228, at *10 (D.N.M. Mar. 18, 2026).

## B.    Irreparable Harm

Petitioner has sufficiently shown that he faces irreparable harm, absent his release from custody. "The irreparable harms imposed on anyone subject to immigration detention (or other forms of imprisonment) are self-evident." *Guillermo M. R. v. Kaiser*, 791 F.

Supp. 3d 1021, 1037 (N.D. Cal. 2025) (internal quotation marks and alterations omitted); *see also Padilla v. Bowen*, No. 2:25-CV-10780-CAS-SK, 2025 WL 3251368, at *9 (C.D. Cal. Nov. 21, 2025) ("The Ninth Circuit has recognized the 'irreparable harms imposed on anyone subject to immigration detention'" (quoting *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017)). Further, beyond pointing to the deprivation of his liberty, Petitioner claims that he is suffering from mental and physical health issues associated with his detention, and he has not received adequate medical care while in custody. *See* (Renewed Motion at 13 (claiming Petitioner suffers from neck and tooth pain, depression, anxiety, mood swings, and lack of sleep attributable to his beating by Officers Robles and Hisle)).

### C. Balance of Equities and Public Interest

When the government is the nonmoving party on a TRO application, the Court's consideration of the balance of the equities and public interest merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). In their Renewed Opposition, Respondents argue that Petitioner is scheduled for an upcoming removal hearing but have not presented argument for how the Court should consider the hearing in assessing the balance of equities and public interest. *See* (Renewed Opp. at 3; ECF No. 28); *see also* (Opp. at 21 (arguing that IJ was scheduled to issue ruling on Petitioner's removal on February 12, 2026)). "Removal proceedings may drag out for many years," *Mendez-Colin v. Garland*, 50 F.4th 942, 949 (9th Cir. 2022), such that the pendency of a decision by the IJ cannot justify Petitioner's continued detention in violation of due process. Indeed, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). Moreover, as discussed above, Petitioner has sufficiently shown that he faces irreparable harm absent interim injunctive relief. Therefore, the Court finds that all three of the *Winter* factors weigh in Petitioner's favor and GRANTS the Motion.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion and ORDERS as follows:

1.    Respondents are ORDERED to release Petitioner immediately;

2. Respondents are temporarily ENJOINED AND RESTRAINED from re-detaining Petitioner unless they demonstrate during a pre-deprivation bond hearing before a neutral decisionmaker that there has been a material change in circumstances justifying Petitioner's re-detention;

3. Respondents are ORDERED TO SHOW CAUSE in writing no later than five (5) days from the date of this Order why the Court should not issue a preliminary injunction.  Petitioner may file a Reply no later than seven (7) days from the date of this Order.  The Court sets a hearing on whether a preliminary injunction should issue for Friday, April 24, 2026, at 10:00 a.m. The Court will accept a stipulated briefing schedule extending these dates on the condition that the parties agree to an extension of the TRO.

**IT IS SO ORDERED.**

DATED:  April 15, 2026

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE